STATE EX REL. PALAGI, RESPONDENT, *v.* FREEMAN ET AL., APPELLANTS.

(No. 6,156.)

(Submitted November 30, 1927. Decided December 10, 1927.)

[262 Pac. 168.]

*Juvenile Delinquency—Purpose of Act—Procedure—Failure to Hear Evidence as to Fitness of Parents to Care for Child— Refusal of New Trial Error.*

Juvenile Delinquents—Purpose of Act—Function of Court.
  1. Proceedings under the Juvenile Delinquency Law are in no sense criminal; the law does not contemplate punishment for an offense committed by an erring minor; it is no more than an

1. See 7 R. C. L. 981; 14 R. C. L. 278.

administrative police regulation for the saving of the child and the protection of society; in administering it the courts act more in a paternal than in a judicial capacity, and the provisions of the Act in which the proceedings shall be conducted are exclusive.

Same—Procedure.
2. The citation to the persons mentioned in section 12279, Revised Codes 1921, to show cause in a juvenile delinquency case, contemplates that it shall serve the purpose of a summons in a civil action or citation in a special proceeding, and if on the return day the parties make answer, the court must fix a day for trial giving them reasonable opportunity to procure witnesses.

Same—Act Does not Provide for Plea of Guilty—Such Plea not Binding on Parents.
3. Held, that since the Juvenile Delinquency Act does not provide for a plea of guilty or not guilty, and the parents or guardian of the accused child are interested parties, a plea of guilty without hearing evidence as to the ability or fitness of the parents or guardian to care for and control the child, thus rendering a finding against them on that point impossible, is not binding on them.

Same—Failure to Hear Evidence as to Fitness of Parents to Control Child—Refusal of New Trial Error.
4. Where no evidence of the fitness or unfitness of the parents of an accused delinquent minor to control or take care of him was heard by the court, a judgment that they were unfit was unsupported by the evidence and refusal of a new trial on the ground of new evidence was error.

---

[1]   Infants, 31 C. J., sec. 226, p. 1101, n. 45; sec. 231, p. 1105, n. 7, 8; sec. 237, p. 109, n. 10.
[2]   Infants, 31 C. J., sec. 231, p. 1105, n. 12, 13; sec. 237, p. 1109, n. 98 New.
[3]   Infants, 31 C. J., sec. 234, p. 1107, n. 69; sec. 237, p. 1109, n. 98; sec. 238, p. 1109, n. 12.
[4]   Infants, 31 C. J., sec. 236, p. 1108, n. 96; sec. 237, p. 1109, n. 10; sec. 242, p. 1110, n. 43.

*Appeal from District Court, Cascade County; W. H. Meigs, Judge.*

PROCEEDING by the State, on the relation of Guy Palagi, Chief Probation Officer, against Patrick Freeman and another, as delinquent juvenile and parent of such juvenile. From the judgment entered and the order denying new trial, defendants appeal. Reversed and remanded.

*Mr. F. A. Ewald,* for Appellants, submitted a brief and argued the cause orally.

*Mr. L. A. Foot*, Attorney General, and *Mr. I. W. Choate*, Assistant Attorney General, for Respondent, submitted a brief; *Mr. Choate* argued the cause orally.

We wish to direct the attention of the court to the fact that juvenile delinquent proceedings are not criminal actions, and hence the record should not be tested with that strictness applicable to a criminal case, nor are the constitutional provisions governing the latter applicable to the former. Thus, in *People v. DeFehr* (Cal. App.), 254 Pac. 588, the court held that juvenile delinquent proceedings do not involve criminal prosecution, judgment or sentence. In *Ex parte Daedler*, 194 Cal. 320, 228 Pac. 467, the court held that juvenile delinquent proceedings are not penal, but reformatory. In that case, the court also held that the fact that a minor had committed the crime of wilful murder was not only sufficient to require the minor to be made a ward of the court, but furnished some evidence that he had passed beyond parental control. We think the reasoning in that case is essentially pertinent to the case at bar.

Here it appears that a minor and his mother both admitted that such minor was incorrigible; that he had stolen one valuable automobile and had taken and driven another without the consent of the owner. These acts were not only crimes in law, but they were amply sufficient to indicate that the boy's mother was unable to properly discipline him. Even if Mrs. Freeman had been permitted to present the evidence set forth in her affidavits, in support of her motion for a new trial, such evidence would not have negatived the inevitable conclusion necessarily to be drawn from the boy's conduct—that his mother was unable to properly control and discipline him. The fact that reputable citizens of Great Falls may have been willing to testify that Gertrude Freeman was eminently qualified and able to control and discipline Patrick Freeman, would, we think, have carried little weight in the face of the uncontradicted showing that she had not done so, and had not been able to prevent her son from committing a serious violation

of law.   See, also, the case of *Hills* v. *Pierce,* 113 Or. 386, 231 Pac. 652, in which the court of that state also holds that juvenile delinquent proceedings are not criminal but are designed to provide for the children's welfare as a ward of the state, and should be liberally construed in favor of such welfare.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On March 22, 1927, the relator, Guy Palagi, chief probation officer of Cascade county, presented to the district court of that county a petition charging that Patrick Freeman, a minor of the age of fourteen years, was a juvenile delinquent, and that Gertrude Freeman, his widowed mother, was unwilling and unable to care for, protect, train, educate, control and discipline him.   The petition further recites that young Freeman "is incorrigible, in that he violates the laws of the state," and then charges that on March 16, 1927, Freeman took from the street and drove an automobile without the consent of the owner, and that, on the following day, he with William Fenton, Jr., Charles Ireland and Victor Hutton, "took, stole, and carried away one Buick automobile," of the value of $1,500.   At the same time like petitions were filed concerning Fenton, Ireland and Hutton, wherein it is alleged that, on March 1, Fenton and Ireland, and on March 2, Fenton, Ireland and Hutton, took automobiles from the street, and drove them without the consent of the owners, and each petition charges that the four boys joined in the theft of the Buick car on March 17.

Citations were issued on March 22, and served on the 23d on each of the boys and on their parents, which citations were made returnable on March 26.   On the return day all of the boys appeared in the courtroom with their parents, with the exception of Mrs. Hutton, who was ill; whereupon such proceedings were had that the following minute entry was made by the clerk of the court, varying only as to the name of the minor:

"The county attorney with the defendant came into court * * * in charge of the sheriff. The court duly advised Patrick Freeman of the charge filed against him. The defendant * * * waived time in which to plead, and forthwith entered his plea of guilty. The following witnesses were duly sworn and examined, * * * with reference to Patrick Freeman and three other boys implicated with him. After the conclusion of evidence, the court ordered that the said Patrick Freeman be committed to the Montana State Industrial School until he has attained the age of twenty-one years, or until he is discharged," etc.

The entry in the Freeman case recites that the defendant came into court "with no attorney"; in the Ireland case it is shown that the "defendants" were represented by John McKenzie, and in the Hutton case by "F. A. Ewald, Esq."

No judgment was entered in either of the cases, other than as the minute entry contains the decision of the court. What testimony was elicited from the witnesses examined is not disclosed. The court made no findings, and, it will be observed, no reference is made in the minute entry to the parents of the children. The court at the conclusion of the proceedings had, issued a commitment in each case, and the four boys were taken to the industrial school.

Upon application of the defendants, this court thereafter issued writs of habeas corpus returnable before the district court of Dawson county, upon the record as made up, and thereupon the trial court made, signed, and filed judgments, regular in form, containing recitations to the effect that the parents were unable to care for, protect, educate, and discipline the boys, and amended the minute entries of March 26 above to show that the boys and their parents were advised that they were entitled to a trial by jury, and waived the same; that the court proceeded to hear evidence; and that in each case, the boy named was "adjudged by the court * * * guilty as charged in the petition." While these amendments of the record were made on April 9, they were dated as of March 28, and, with the record then appearing regular on its

face, the habeas corpus proceeding collapsed. The defendants in the three cases above referred to then moved for a new trial, for an order striking the amended minutes, and for an order setting aside the judgment. These motions were submitted to, and denied by, the court, and on the hearing thereof considerable light was thrown upon the proceedings which we are now called upon to review on the appeal of the three cases from the judgments entered and the orders denying new trials. The boys are now in the custody of their parents on bail.

By affidavits, oral testimony, statements by the presiding judge and general discussion appearing in the record, we gather the following facts: At the time the citations were served, the probation officer, in all good faith and in a friendly manner, advised the parents of the boys that "there would be nothing to the case"; that they need not employ counsel, and, on the hearing, the cases would be turned over to the Cascade county juvenile committee; that the boys would not be sent to the industrial school, would probably receive "a reprimand." Notwithstanding this advice, on the morning of the hearing, Hutton employed F. A. Ewald, Esq., to represent his boy, and a friend of the Irelands requested John McKenzie, Esq., to' appear for Charles Ireland, although McKenzie had no opportunity to consult with his clients. Owing to the lack of time and the fact that general practitioners are not often called into such cases, neither the defendants nor their attorneys present knew the procedure to be followed, or had more than the vaguest idea of what was going on at the hearing, and relied upon the advice of the probation officer. Being thus lulled into fancied security, they entered pleas of guilty for the boys, which meant no more than that the boys admitted that they took the cars as charged. Members of the Cascade county juvenile committee were present in the courtroom, but the cases were not turned over to them.

No evidence was introduced or inquiry made as to the ability of the parents, or any of them, to care for and control the boys. Mr. Ewald addressed the court in a plea for leniency. Mr. McKenzie requested leave to address the court

while the court was talking to the boys, but receiving no reply, refrained from interrupting the court further. On the motion for a new trial, the judge advised counsel that no trial was had. He merely accepted the pleas of guilty, and then heard evidence to aid him in reaching a decision as to what he should do with the boys. He also advised counsel to the effect that he only included in the judgments the statement concerning the inability of the parents to care for, control and discipline the boys, at the request of the county attorney, and not because he considered a finding on the subject necessary.

It further appears from the record that, prior to the filing of the petitions, the probation officer, under direction of the court, had made an investigation in each of the cases, and had reported the result thereof to the court. As to young Freeman, the report shows that his family had lived in the county seven years; that he attended school with "attendance good, conduct fair, but scholarship very poor; in the fifth grade, but should be in the seventh"; home training good, church and Sunday-school attendance fair; "laxity of discipline due to absence of father"; mother a widow with three other children, two of whom are younger than Patrick, and the one older is but fourteen, and a girl; having a hard time to make a living. "She told me that the defendant is stubborn, and sometimes will not obey her, and at such times she cannot do anything with him."

The report as to young Ireland shows him an average boy of his age; in the sixth grade, but with poor scholarship; "father and mother good, respectable citizens"; home training good with "no reason for the defendant to want to run away from home"; "like the other three, * * * got the notion that he would like to see the world; * * * notwithstanding the trouble he has gotten into, I find that he has borne a good reputation."

As to Hutton, the report shows him the average boy of his age in school and otherwise; his father to be a contractor; but the report recites: "When defendant first got into trouble on March 3, 1927, he complained to me of his treatment at home,

and told me he did not care to return home. This no doubt had a lot to do with his last episode. I have spoken to his father about this, and he had admitted his mistake. He would not tolerate any wrong act of his children, and believed that severe punishment was the only remedy for a misdeed, but had learned that generally harsh treatment is worse than kindness. Both the father and mother of the defendant are fine, respectable persons and desire to do what is proper and just.''

All three reports show that the boy under investigation smokes cigarettes and is out nights.

The record does not show that either of the boys had been in trouble or had violated the law prior to March, 1927, and a large number of prominent citizens of Great Falls made affidavit that, if a new trial was granted, each would testify that the parents were eminently qualified, willing and able to care for, protect, educate, discipline and control the boys.

The court denied the motion for a new trial upon the ground of new evidence, for the reason that no showing of diligence was made, and on other grounds, presumably upon the theory that, as no trial was had, no new trial could be granted.

1. The ruling as to newly discovered evidence was technically correct. The provisions of the ''Penal Code'' relating to appeals and motions for a new trial are made applicable to juvenile cases by section 12284, Revised Codes 1921, and, under section 12048, Id., the movant must show that the evidence is, in fact, newly discovered, and could not have been discovered with reasonable diligence prior to the trial; but, as no evidence on the part of the state attacked the ability or willingness of the parents to control the boys, there was nothing to rebut in the proceeding had on March 26, and no occasion arose for the production of the testimony referred to—a situation which will be later discussed.

2. The court proceeded on the theory that, on the entry of [1] the pleas of guilty, as in a criminal proceeding, all that was necessary in order to dispose of the cases was to hear testimony in mitigation or aggravation of the offense, in order to arrive at a conclusion. While section 12284, above, provides

that "appeals may be prosecuted as in other *criminal* cases,"
proceedings against juvenile offenders are in no sense criminal
proceedings; they do not contemplate punishment for the
offense committed but the prevention of erring minors from
becoming criminals. (7 R. C. L. 981, and cases cited.) The
purpose of such statutes is to save children from prosecution
and conviction on charges of crimes committed against the
state, and to relieve them from the stigma attaching to con-
viction; to guard and protect them from themselves and evil-
minded persons with whom they are in contact, including
improper home influences, and to train them mentally, morally
and physically, when it appears that they are not receiving
such training in the home. It is but an administrative police
regulation for the saving of the child and the protection of
society, and, in administering the law, the courts to which such
administration is entrusted act more in a paternal, than in a
judicial, capacity. (*Lindsay* v. *Lindsay*, 257 Ill. 328, Ann.
Cas. 1914A, 1222, 45 L. R. A. (n. s.) 908, 100 N. E. 892;
*Mill* v. *Brown*, 31 Utah, 473, 120 Am. St. Rep. 935, 88 Pac.
609; *Ex parte Januszewski* (C. C.), 196 Fed. 123; *Van Walters*
v. *Board*, 132 Ind. 569, 18 L. R. A. 431, 32 N. E. 568.)

The Delinquent Children's Act, contained in Chapter 51,
Part II of the Codes, is comprehensive and exclusive as to the
manner in which such proceedings shall be conducted. There-
under such children are not to be treated as criminals. They
are not even to be brought into a courtroom for a hearing, but
all trials of such children shall be held in chambers or in a
room specially provided for the purpose (sec. 12282), and
nowhere in the Act is there any provision for arraignment or
the entry of a plea. No warrant of arrest is issued, but, where
a child is taken into custody, he or she must be immediately
taken before the court, and the judge thereof, in turn, is re-
quired to turn the matter over to the probation officer for in-
vestigation, and postpone the hearing, from time to time, for
that purpose. (Sec. 12280, as amended by Chapter 52, Laws
1923.) All proceedings under this Act are by petition, and
not by indictment or information, as in cases of criminal prose-

cutions, and thereupon a citation is to be issued requiring those persons mentioned in the petition to appear at a time certain, and "show cause before the court," and to "answer the petition on the return day of the citation." (Sec. 12279.)

3. While section 12279 provides that these persons mentioned [2] therein shall "show cause," and shall answer the petition on the return day, the Act clearly contemplates that the citation shall serve the purpose of a summons in a civil action, or citation in a special proceeding. The return day is the day for answer, and, answer having been made, the court fixes a day for trial (section 12282), and reasonable opportunity to procure witnesses is to be given the accused and the parents. (Sec. 12280.) Unless, on the return day, the parties signify that they are ready for a hearing, the court is not justified in proceeding with the matter, but should fix a time certain when a hearing will be had.

4. The plea of guilty was further ineffective to warrant the [3] commitment made, for the reason that, if such plea only admitted that the boys were guilty of taking the automobiles charged, it left the court without information on which to determine the important question of the ability and fitness of the parents to care for and control their children, and, as the boys were the only ones called upon to plead to the charges made in the petition, their pleas could not have been binding upon their parents or warranted a finding against the parents.

5. Again the court erred in construing the Juvenile Delinquent Act to authorize a commitment solely on a finding that an accused minor had violated a state law. While section 12275 defines delinquents, and section 12276 declares that "any child under eighteen years of age who shall commit any of the acts or do any of the things mentioned in the above section [among which acts is included 'who violates any law of this state'] shall be deemed a delinquent child," without referring to the parents or their ability to control the child, the section continues: "and shall be proceeded against as such in the manner hereinafter provided."

142    State ex rel. Palagi *v.* Freeman et al.    [Dec. T. '27

[81 Mont. 132.]

The manner of proceeding is by petition (sec. 12278), which must set forth, not only the facts on which it is alleged that the child is delinquent, but that it is for the best interest of the child and the state that the child be taken from its parent or parents, or its guardian, and that such parent or parents, or guardian, is unfit, or an improper custodian of the child, or are unwilling or unable to care for, protect, train, educate, control and discipline the child. The failure to include these latter allegations renders a petition insufficient, and a judgment based on such a petition is void. (*In re Satterthwaite,* 52 Mont. 550, 160 Pac. 346.)

6. The record is void of any evidence which would support [4] the recital in the judgment, and the presiding judge frankly states that no testimony was taken for the purpose of determining the fitness and ability of the parents to care for, control and discipline the boys. At most, the court had before it the ex parte reports of the probation officer above quoted, which were not legal evidence of even the facts therein set forth. As these matters must be set forth in the petition and charges made therein, those charges must be established by evidence, with the corresponding right of cross-examination. (14 R. C. L. 279.) Therefore, as there was no evidence before the court on which findings could be based to support the statement in the judgment on this phase of the case, the judgment is contrary to the evidence.

7. The basic principle of this legislation is that the best interest of the child must be served, and, unless it appears that, by reason of lack of parental fitness, willingness or ability to control and care for the child, society and the welfare of the child is endangered by the likelihood of a repetition of the offensive conduct shown, a court is not justified in "substituting the state as guardian of the person of the child in place of the parent." (*Mill* v. *Brown,* above, quoted in *Re Satterthwaite,* above.) If this were not so, and we were compelled to adopt the construction placed upon the Act by the trial court, a child of six years of age, caught pilfering a cookie from the pantry shelf of a neighbor, should be taken from the

loving care of a mother, and delivered to the care of strangers for a period of fifteen years, unless sooner released.

For the reasons stated, we consider the judgment improvidently entered contrary to both law and the facts. The judgment is reversed and the cause remanded to the district court of Cascade county for further proceedings in conformity with this opinion and the Juvenile Delinquency Act.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Myers, Stark and Galen concur.