## In re STATE, in Interest of BENNETT.

No. 5082. Decided December 12, 1930. (293 P. 963.)

*King & King,* of Salt Lake City, for appellant.

*John D. Rice,* County Attorney, of Salt Lake City, for respondent.

## ELIAS HANSEN, J.

The juvenile court of the Third judicial district in and for Salt Lake county, Utah, adjudged Ladrue Bennett, who is a minor of the age of 14 years, to be a delinquent, and ordered that he be committed to the state industrial school. He appeals. The acts of delinquency charged in the complaint in the juvenile court are:

"That on or about the 16th day of February, 1930, at the County of Salt Lake, State of Utah, said Ladrue Bennett, a child fourteen years of age, did become delinquent by reason of wilfully, knowingly and unlawfull taking and carrying away from the Postoffice in Midvale, Utah, from box rented to the Midvale State Bank, one letter addressed to said Midvale State Bank, containing $17,000.00 in cancelled checks; and by further reason that on February 21, 1930, he did then and there use a certain vehicle, to-wit: Chevrolet 1928 model * * *, being the property of Wm. E. and D. R. Palmer and General Motors Acceptance Corporation, without the consent of the owner thereof, contrary to the provisions of the Statutes of Utah in such cases made and provided."

The mother of appellant accepted services of notice of the time and place of the hearing upon the complaint. The father was not served with process nor did he enter an appearance in the cause. Various witnesses were examined at the hearing, including the father of the appellant. The juvenile court made written findings of fact wherein it was found that appellant was delinquent by reason of his having committed the acts alleged in the complaint together with other acts of delinquency not alleged in the complaint. The court also found "that Joseph Bennett and Minnie Bennett, parents of said juvenile, and each of them, by reason of their failure to control said juvenile and prevent said juvenile's acts of delinquency aforesaid, are unfit to have and continue in custody of said juvenile Ladrue Bennett." The evidence is ample to support the finding that the appellant is a juvenile delinquent. No claim is made to the contrary. Complaint is made because the father of the appellant was not served with process; because the court found the parents of the appellant unfit to have and continue in his custody; and because appellant was committed to the state industrial school. The manner of procedure in the interest of a juvenile is provided for in title 21, c. 9, Comp. Laws Utah 1917 (sections 1814-1833),

and the amendments thereto. It is there provided in section 1818 that:

"Upon filing such complaint, the clerk or court shall set the same for hearing; notice of said hearing shall be served by the probation officer, or sheriff or any peace officer, on the parents, parent, custodian, or legal guardian of said child residing within the state of Utah, which notice shall be substantially in the following form, to wit:

"(Title of court and cause.)

"To ———— (here designate relationship). You are hereby notified to appear within two days after the service of this notice upon you, if served within the county wherein the above proceeding is pending, otherwise within five days, and assert and defend any rights to custody, control, or guardianship you may have or claim over or in the above named child; otherwise your default will be entered and the court will proceed to hear and determine your said rights or supposed rights in accordance with the law and the evidence."

This court held in the case of *Jensen* v. *Hinckley*, 55 Utah 306, 185 P. 716, that:

"Service of notice under Comp. Laws 1917, § 1818, or voluntary appearance amounting to waiver, is necessary to confer jurisdiction on the juvenile court to determine right to custody of a delinquent child, but not to confer jurisdiction, pursuant to section 1815, to determine delinquency," and "the mother of a minor son; against whom a delinquency complaint had been filed in the juvenile court pursuant to Comp. Laws 1917, § 1815; and not served with notice thereof, as required by section 1818, held not to have waived service of notice by appearing in court merely as a witness; 'waiver' being an intentional relinquishment of a known right."

The quotation is from the syllabus, which fairly reflects the principles of law announced in the opinion. The fact that the mother of the appellant in the instant case accepted service of notice upon herself cannot be said to have conferred jurisdiction on the juvenile court to determine the right of the father to the custody of his child. The right of the father to the custody of a minor child is coextensive with that of the mother. The statute above quoted clearly contemplates that, where both parents are alive and reside

within this state, each shall be served with notice. The rules of law announced in the case of *Jensen* v. *Hinckley,* supra, require a reversal of that part of the judgment appealed from whereby the appellant was ordered committed to the state industrial school and the father thus deprived of his right to his custody.

The evidence in this case, however, shows that the appellant is in need of vigilant supervision and guidance if he is to be reared to useful citizenship. The record before us does not justify a dismissal of the proceedings begun in his interest. It therefore becomes necessary to discuss other questions which are presented on this appeal for the guidance of the juvenile court in any further proceedings that may be had in this cause.

There is no evidence in this case which shows or tends to show that either of the parents of the appellant is unfit to continue to have his custody, unless it can be said that they are rendered unfit to have such custody because he committed acts of delinquency while in their custody. So far as appears, the parents are upright law-abiding citizens. They have provided the appellant with a good home, with food, clothing, and medical attention, and have required that he attend school regularly whenever his health has permitted.

It is the contention of appellant that a juvenile court may not deprive a parent of the custody of a minor child unless it is made to appear that such parent is unfit to have the custody of his child. The following cases lend support to such contention; *Mill* v. *Brown,* 31 Utah 473, 88 P. 609, 613, 120 Am. St. Rep. 935; *Stoker* v. *Gowans,* 45 Utah 556, 147 P. 911, Ann. Cas. 1916E, 1025; *Redford* v. *Anderson,* 56 Utah 287, 190 P. 775. In the case of *Mill* v. *Brown,* supra, it is said that:

"Before the state can be substituted to the right of the parent it must affirmatively be made to appear that the parent has forfeited his natural and legal right to the custody and control of the child by reason of his failure, inability, neglect, or incompetency to discharge the duty and thus to enjoy the right."

In the case of *Stoker* v. *Gowans,* supra, it was held that a juvenile court has jurisdiction to commit a juvenile to the state industrial school where its parent, after notice and a hearing, has been adjudged unfit to have its custody. In the case of *Bedford* v. *Anderson,* supra, it was held that the custody of a juvenile delinquent should remain with the mother until the juvenile court "upon due notice, and upon competent and sufficient evidence, determines that she is an unfit person to have the custody of said minor." The law creating juvenile courts and conferring upon them jurisdiction in cases relating to the custody, detention, and guardianship of delinquent children under the age of 18 years has been amended on various occasions since it was originally enacted. Some of those amendments were made between the time that *Mill* v. *Brown,* supra, was decided and the time that the opinion of *Bedford* v. *Anderson* was rendered. So far as material to a determination of the questions presented for determination in the instant case, the juvenile law is the same now as it was when the case of *Bedford* v. *Anderson* was determined. Provision is made in the act for the kinds of judgments or decrees that may be rendered by juvenile courts. Comp. Laws Utah 1917, § 1823, as amneded by Special Session Laws Utah 1919, c. 5, p. 7, § 1, reads as follows:

"Upon the entry of such finding of fact, the court shall render a decree and judgment that the juvenile is a delinquent, and that the parents, parent, custodian, or guardian is or are fit or unfit to continue in control and custody of the juvenile in accordance with the fact. In case judgment is rendered that the parents, parent, custodian or guardian is or are fit to have control or custody of the juvenile, the court may commit the child to the care of the probation officer, allowing it to remain in its own home subject to the visitation of the probation officer, such child to report to the court or probation officer, as often as may be required and subject to be returned to the court for further proceedings whenever such action may appear necessary. In case it is adjudged and decreed that the parents, parent, custodian, or guardian is or are fit or unfit to have control and cusody of the juvenile, the court may further adjudge and decree as follows:

"1. That the juvenile be committed to its own home under the care, control and visitation of a juvenile officer.

"2. That the juvenile be committed to any suitable family home open to the court for that purpose, subject to the care, control, and visitation of a probation officer.

"3. That the juvenile be committed to any institution within the state incorporated or organized for care, correction, or advancement of children.

"4. That the juvenile be committed to any institution that may be provided by the state or county for the care, correction, or advancement of children.

"5. That the juvenile be committed to the state industrial school.

"6. That the juvenile may be fined in any sum not exceeding $25.00.

"7. That in all cases where the juvenile is charged with the commission of a felony, the juvenile court shall act as a committing magistrate with the same jurisdiction as a justice of the peace sitting as a committing magistrate, and when it appears that a felony has been committed and that there is sufficient cause to believe the juvenile defendant guilty, to commit him to· the district court of the county where the offense is committed, there to be prosecuted upon information or indictment as provided by law. In such cases the court shall not adjudge or decree that the parents, parent, custodian or guardian is or are fit or unfit to have control and custody of the juvenile.

"8. That the juvenile be disposed of in any other way except to commit it to jail or prison that may, in the discretion and judgment of the court, under all the circumstances, be for the best interest of the child, to the end that its wayward tendencies shall be corrected and the child be saved to useful citizenship.

"No judgment or decree so entered shall operate after the child reaches the age of twenty-one years, and all orders, judgments, and decrees, except orders committing the juvenile to the state industrial school or to the district court, shall be under the control' of the court and may be modified, amended, or recalled at any time until the child reaches the age of twenty-one years."

Prior to the amendment of 1919, the sentence which immediately precedes the enumeration of the judgments or decrees that may be entered by juvenile courts read thus:

"In case it is adjudged and decreed that the parents, parent, custodian, or guardian is or are unfit to have control and custody of the juvenile, the court may further adjudge and decree as follows."

It will be observed that the amendment of 1919 added the words "fit or" before the word "unfit" in the sentence above quoted. It would seem highly improbable that the Legislature intended by the amendment of 1919 that parents who are fit to have the custody of their child should be deprived of such custody where the parents are willing and able to correct the child's delinquency and rear it to useful citizenship. No institution can take the place of proper home influences in developing the character of a child. It has always been the policy of both the Legislature and the courts of the various states not to deprive or interfere with the important and sacred relation of parent and child unless absolutely necessary for the welfare of the child or for the protection of society. Such have been the purposes which have actuated the lawmaking power of this state in the enactment of the law creating juvenile courts and defining their powers, and such also have been the views entertained by this court whenever it has been called upon to construe that law. In the construction of a statute it is often necessary to enlarge or restrict the meaning of a word or phrase used therein in order to give effect to the purposes sought to be accomplished by the law-making power. It may well be that parents are generally fit to have the custody of their children, and yet they may be unable to prevent one or more of their children from committing acts of delinquency and thus from becoming criminals and a menace to society. When it is made to appear that a parent or parents of a child know that said child is committing acts of delinquency and that they are unable to control such child and prevent him from further wrongdoing, the interest of the child as well as the protection of society may well demand that the parents surrender their custody of their child to the state so that, if possible, the child's evil tendency may be corrected and society protected. If, therefore, the parents, parent, custodian, or guardian of a delinquent juvenile are or is otherwise fit to have the control and custody of the juvenile, but cannot prevent him from

wrongdoing, then and in such case the juvenile court may commit such juvenile to the industrial school when the best interests of the juvenile or the protection of society demand such commitment. If the word "fit" as used in the amendment of 1919 is construed as indicated, the juvenile law as amended is in harmony with the aims and purposes evidently sought to be accomplished by the Legislature and is likewise in harmony with the decisions of this court. Otherwise the sentence last above quoted would be inconsistent with other provisions of the act and would offend against principles of natural justice.

Applying the law as thus construed to the facts in this case, can it be said that the parents should be deprived of the custody of appellant? There is no evidence whatsoever in the record that the parents are generally unfit to have the custody of the children. There is some evidence to the contrary. Both of the parents testified that they did not know of any delinquency of appellant until the filing of the complaint. In view of the fact that appellant's delinquencies covered only a short period of time, it may well be that the parents were ignorant of his wrongdoing until after these proceedings were begun. Under such circumstances it cannot be said that the parents are unable to correct the evil tendencies of the appellant, and they should not be deprived of his custody until they are first given a reasonable opportunity, with such assistance as may be rendered by the officers of the juvenile court, to bring about the desired reformation.

The judgment committing the appellant to the state industrial school is reversed, and this cause is remanded to the juvenile court of Salt Lake county for such further proceedings not inconsistent with the views herein expressed as may be deemed proper.

CHERRY, C. J., and STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.