345 P.2d 423

In the Matter of Jeffrey Richard JOHNSON and Charles Leo Johnson, III, Minors.

No. 6704.

Supreme Court of Arizona.

Oct. 28, 1959.

Rehearing Denied Nov. 10, 1959.

Lewis, Roca, Scoville, Beauchamp & Linton and John P. Frank and A. Gordon Olsen, Phoenix, for Gene W. & Charlotte Blanpied.

Wade Church, Atty. Gen., Leslie C. Hardy, Chief Asst. Atty. Gen., John Vanlandingham and Newman W. White, Asst. Attys. Gen., for Honorable Francis J. Donofrio, Judge of the Juvenile Court.

JOHNSON, Justice.

This is an appeal by Gene W. and Charlotte Blanpied from an order of the Juvenile Court of Maricopa County terminating an order previously entered declaring Jeffrey Richard Johnson and Charles Leo Johnson, III, to be dependent minor children.

The Attorney General of the State on behalf of the Judge of the Juvenile Court, filed a motion to dismiss the appeal on the grounds that the Blanpieds were not the real parties in interest and that the order dismissing the petitions was not an appealable order. It is necessary to consider the following facts to determine the merits of the motion.

Charles Johnson, who was born in 1946, and Jeffrey Johnson, who was born in 1949, are the issue of Charles Johnson, Jr., and Ann Johnson. In 1950 Charles Johnson, Jr., deserted his wife and children and they moved into the household of the aunt and uncle of the children, Gene W. and Charlotte Blanpied. Mrs. Blanpied is the sister of Charles Johnson, Jr. In 1952 the Blanpieds moved to Arizona where they established a home in which Mrs. Johnson and the minor children continued to reside. This living arrangement continued until later in 1952 when Mrs. Johnson went to California to work. It was mutually agreed that the minor children would remain with the Blanpieds, however, Mrs. Johnson returned periodically for visits with the children.

While residing in California Mrs. Johnson obtained a divorce from the father of the minor children and was awarded the custody of the children. Mr. Johnson was ordered to pay the sum of $125 per month to the mother of the children for their support, which amount was forwarded by her to the Blanpieds each month for the support and maintenance of the children.

On the 30th day of August, 1955, in an apparent attempt to secure the legal custody of the children Gene W. Blanpied filed verified petitions with the Juvenile Court of Maricopa County, alleging that the children were dependent and in need

of the care and protection of the Court. Thereafter the Juvenile Court directed the filing of the petitions and ordered the matter set for a formal hearing on the 11th day of October, 1955.

Thereafter as provided by A.R.S. § 8–222, a child welfare worker made a preliminary investigation of the facts surrounding the filing of the petitions and after interviewing Mrs. Johnson, reported to the court in writing as follows:

"* * * She (Mrs. Johnson) stated that her decision to place the physical custody of these children with Mr. and Mrs. Blanpied was no implication that she was not interested in the children, and that at some future time, she would want custody to be returned to her. She said that a plan had been thoroughly discussed between she and Mr. and Mrs. Blanpied. She pointed out that the children had had security and the advantage of a wholesome environment in their present home and she wished to plan to continue rather than have the children with her which would mean she would either have to provide babysitters or put them in the nursery while at her employment. * * * She, however, was very clear in stating that she did not want to place herself in a position that the children could not be returned to her * * *."

The Juvenile Court on October 11th, 1955, after a formal hearing entered an order which provided in part as follows:

"Now, Therefore, It Is Ordered that Charles Leo Johnson and Jeffrey Richard Johnson are made wards of the Court and committed to the care, custody and control of Mr. and Mrs. Gene Blanpied of Phoenix, Arizona, subject to the protective supervision of the Maricopa County Department of Public Welfare.

"It is further ordered continuing this matter to April 9, 1956, unless sooner restored to the calendar."

The minor children have remained in the custody of the Blanpieds since the above order with the exception of short periods of time when they were permitted to visit with their mother in California.

The dependent status of the children was continued at regular intervals by the Juvenile Court on the basis of written reports made to it by the welfare department in an informal manner until the report of October 16, 1957, at which time the Blanpieds were present. The hearing on this date was for the purpose of discussing guardianship proceedings and the written report presented to the Juvenile Court by the child welfare worker recommended that the Blanpieds either petition the court for the guardianship of the children and their

estate or that they petition for their adoption and that the two methods of obtaining permanent custody of the children had been explained to the Blanpieds. The Juvenile Court continued the matter in "status quo" and ordered a review during October, 1958, unless sooner restored to the calendar. However, following the hearing of October 16, 1957, the Blanpieds did file a petition for letters of guardianship and apparently such petition was denied by the Superior Court, and no appeal was taken.

On April 21, 1958, the Juvenile Court ordered that the case be brought before the court for review on some day in June, 1958, to determine among other things if the children were still dependent or if the petitions should be dismissed. While no formal notice of this hearing was served on any of the parties, the attorneys for the Blanpieds and Mrs. Johnson were informed by the child welfare worker during the latter part of June, 1958, that at the hearing to be held the welfare department would recommend to the Juvenile Court that the petitions be dismissed as the children were no longer dependent nor neglected.

Finally on June 25th, 1958, the Juvenile Court ordered the matter be "brought for report and review July 16, 1958." While the record does not reveal that notice of this hearing was served on any of the interested parties, nevertheless, on the day set for hearing all the parties, their attorneys and representatives of the welfare department were present and participated in the hearing.

The welfare department recommended to the Juvenile Court that the petitions be dismissed for the reason that their investigation revealed that the children were no longer dependent nor neglected and were being well cared for with the Blanpieds and that Mrs. Johnson, the mother of the children, could now adequately maintain the children. Mrs. Johnson also testified that "she is ready, willing and able physically, mentally and financially to take the children into her custody and take proper care of them." Thereafter on the 23rd day of July, 1958, the Juvenile Court denied the request of the Blanpieds to present evidence and entered the following findings and order:

"And it further appearing to the court from the presentation of the case-work by the Maricopa County Department of Public Welfare and previous review and hearings and discussions in this matter that the children are no longer dependent nor neglected children, and that they are properly cared for in the circumstances they now are, now, therefore,

"It Is Ordered Petitions in the above cause be and the same are hereby dismissed."

The Blanpieds on appeal contend that the Juvenile Court erred in terminating the dependent status of the minor children.

The basis for their objection is that they were appointed guardians of the minor children by virtue of the order of October 11, 1955, and were deprived of procedural due process in that the Juvenile Court did not give them due notice of, and an opportunity to present evidence at the hearing held on July 16, 1958, resulting in the dismissal of the petitions originally filed.

After the Juvenile Court has acquired jurisdiction as provided in A.R.S. § 8–222, supra, the court is empowered to inquire into the facts, and " * * * make such order for the commitment, custody and care of the child as the child's welfare and the interest of the state require he may commit the child * * * 5. To a reputable citizen of good moral character * * *." A.R.S. § 8–231.

It is apparent from the record of our instant case that the Juvenile Court Judge presiding at the time of the hearing on the original petitions to declare these children dependent inquired into the facts and considered the following recommendation made by the casework supervisor of the welfare department, wherein it was stated:

"It is therefore being recommended that Charles Leo III and Jeffrey Richard Johnson be made wards of the court for protective purposes and that they be committed to the physical care, custody and control of Mr. and Mrs. Gene Blanpied * * *."·

It then became the duty of the Juvenile Court to enter an order, which is set forth above, under the provisions of A.R.S. § 8–233, which reads as follows:

"When the juvenile court awards a dependent child to the care of an association, board or institution, public or private, or to an individual, the child shall, *unless otherwise ordered*, become the ward and be subject to the guardianship of that association, board, institution or individual. The association, board, institution or individual shall have authority to place the child in a family home, with or without indenture, and may be made party to any proceedings for legal adoption of the child and may appear in court where the proceedings are pending and consent to adoption. Consent of the association, board or institution, public or private, or the individual to whom the court has awarded the dependent child, shall be sufficient to authorize the court, in its discretion, to include guardianship of the estate of the child." (Emphasis supplied).

This court would be inclined to agree with the contention of the Blanpieds that they were appointed the guardians of the minor children under the order of October 11th, 1955, set forth above, were it not for the fact that the court explicitly "otherwise ordered" that the minor children be made *wards of the court* and merely gave tem-

porary custodial care to the Blanpieds under the supervision of the welfare department. The order declaring these children to be dependent specifically undertook to and did limit the power and authority given to the Blanpieds, which A.R.S. § 8–233, supra, permits. In re Mendevil, 21 Ariz. 586, 193 P. 17.

■ The Juvenile Court under the provisions of A.R.S. § 8–233, supra, undoubtedly has the power to impose upon the parties receiving the temporary custody of children who are wards of the court, such conditions and restrictions, as it deems prudent and wise for the best interest and welfare of the children. The Juvenile Court was fully advised and had before it all the facts surrounding the circumstances of the minor children at the time of the formal hearing on October 11, 1955, and properly came to the conclusion that it would be for the best interest of the children to remain as wards of the court, under the supervision of the welfare department, with only the physical custody vested in the Blanpieds.

When the temporary custody of these children was given to the Blanpieds they were charged with the knowledge of the fact that the Juvenile Court had a right to terminate the custody at any time within its discretion. The record is clear that the Blanpieds knew that they had no more than temporary physical custody of the children. At the time the original order was entered

the Blanpieds were advised by the court that the custody order was being entered for expediency purposes, in order that the children would be permitted to continue living in the home of the Blanpieds and the court at that time suggested that legal action should be taken either through guardianship or adoption in order that permanent custody could be acquired.

It must be remembered that the legal custody of the children was not in the Blanpieds but was in the Juvenile Court, which had continual jurisdiction. The Blanpieds were merely an arm of the court which it had designated to receive them. They thus acquired no legal status or rights over the children as against the Juvenile Court.

■ We hold that the Juvenile Court, under the explicit terms of the order declaring these children dependent, had the discretion at any time the court decided that the best interests and the welfare of the children require change the order and dismiss the petitions, and regardless of any evidence of a change of condition. We find no merit in the contention of the Blanpieds that they were entitled to formal notice of hearing and the right to present evidence before the court could terminate the dependency status of these children for the reason that they had no legal rights under the original order of the Juvenile Court.

We are satisfied that under the circumstances the Juvenile Court was correct in

terminating the order of dependency and dismissing the petitions and it is ordered that the motion to dismiss this appeal is granted.

PHELPS, C. J., and STRUCKMEYER, UDALL and BERNSTEIN, JJ., concur.