407 P.2d 760

Application of Paul L. GAULT and Marjorie Gault, father and mother of Gerald Francis Gault, a Minor, for a Writ of Habeas Corpus.

No. 8549.

Supreme Court of Arizona.

En Banc.

Nov. 10, 1965.

Rehearing Denied Dec. 14, 1965.

**184**

Amelia D. Lewis, Sun City, for appellants.

Darrell F. Smith, Atty. Gen., by Philip M. Haggerty and Frank A. Parks, Asst. Attys. Gen., for appellee.

BERNSTEIN, Justice.

The parents of Gerald Francis Gault appeal from an order entered by the Maricopa County Superior Court dismissing a petition for habeas corpus, discharging the writ and remanding the infant involved to the custody of the appropriate authorities in the Arizona Industrial School. Petitioners filed in this court August 3, 1964 seeking a writ of habeas corpus to secure the release of their minor son who had been committed to the Arizona Industrial School June 15, 1964.

On the same day the petition was filed, we ordered that the matter be heard by the Superior Court of Maricopa County, which hearing was held August 17, 1964. At that time, the following facts were elicited. On June 8, 1964 Gerald Gault and a companion, Ronald Lewis, telephoned from the Gault house to a Mrs. C. and made obscene remarks to her. She reported the incident, the call was traced and the boys picked up. They were taken to the detention home and that same evening Mrs. Gault went there and spoke to Gerald who admitted the episode but, according to her testimony at the habeas corpus hearing, said Ronald used the lewd language. Probation Officer Flagg told her why Gerald was there and said there would be a court hearing the next day. Judge McGhee heard the matter in chambers in the presence of Gerald, Ronald and his father, Mrs. Gault, her elder son Louis, and Probation Officers Flagg and Henderson.

There was a conflict in the testimony at the habeas corpus hearing concerning what transpired at the juvenile hearing. Mrs. Gault testified that in response to the Judge's questions at the juvenile hearing, Gerald said he dialed Mrs. C.'s number, asked her if it was such and such a number, said there was a friend of his who wanted to talk to her, then handed the phone to Ronald who made the lewd remarks. Officer Flagg testified that at the juvenile hearing, Gerald admitted making the phone

call and using some of the obscene language. Judge McGhee testified that Gerald admitted using some lewd words. The Judge further testified that at the conclusion of the juvenile hearing he told Mrs. Gault and Gerald he would think about the case and let them know his disposition of it. Gerald was returned to his home the 12th and on that day or the preceding day Mrs. Gault received a written note from Officer Flagg which said "Mrs. Gault, Judge McGhee has set Monday, June 15th, 1964, at 11:00 a. m. as the day and time for further hearings on Gerald's delinquency" signed "Flagg".

There was a further conflict in the evidence at the habeas corpus hearing concerning the testimony at the second juvenile hearing. Both Mr. and Mrs. Gault testified that no one accused Gerald of making a lewd telephone call and also said that Gerald admitted nothing. Both Mrs. Gault and Judge McGhee agreed that Mrs. Gault had asked him why Mrs. C. wasn't present to which he replied she didn't have to be. But Judge McGhee said Gerald admitted making some of the lewd remarks, although not the more serious ones. The Judge also testified that he informed the Gaults at the juvenile hearing of the possible consequences if Gerald was found to be delinquent, namely, commitment. Gerald did not testify at the habeas corpus hearing.

The Gaults were not given a copy of the petition or written notice of the hearing date except for Flagg's note concerning the hearing on the 15th. But it is clear that they knew the exact nature of the alleged act of delinquency, including the name of Mrs. C., from the day Gerald was detained and they appeared at both juvenile hearings without complaint of inadequate time.

The parents claim they were not informed of a right to counsel, to subpoena witnesses, to cross examine witnesses, of the right of confrontation, to sworn testimony and to a warning of the possible consequences of a finding of delinquency. Assuming they have these rights, it appears from the record that they knew of their right to counsel, to subpoena and cross examine witnesses, of the right to confront the witnesses against Gerald and the possible consequences of a finding of delinquency. In February 1964, Judge McGhee found Gerald delinquent on a different charge and informed the parents that if Gerald came before the court again and was found to be delinquent he might be committed.

The assignments of error may be grouped under three major headings: (1) that the Juvenile Code, A.R.S. § 8–201 et seq., is unconstitutional because it fails to apprise parents and children of the specific charges, does not require timely, adequate and proper notice of a hearing and does not provide for an appeal, all of which is a

deprivation of procedural due process of law; (2) that the juvenile court in fact denied petitioners due process of law by failing to provide proper notice of the charge and the hearing, failing to notify them of certain constitutional rights, by relying upon unsworn hearsay testimony, by failing to make a record and by removing custody of Gerald from his parents without a showing of their incompetency or inability to properly care for him, and finally, (3) a group of miscellaneous errors dealing with the habeas corpus hearing in Maricopa County and the original detention of Gerald.

The parents contend our juvenile code is unconstitutional because it fails to provide for adequate notice of the alleged act of delinquency and fails to provide for proper notice of a juvenile hearing sufficiently in advance to enable the parents and child to decide whether to admit or contest the allegations. It is also argued that the statute is invalid because it does not provide for an appeal procedure. All of these omissions are said to violate procedural due process of law contrary to our state and federal constitutions. U. S. Const. Amendment 14, § 1; Arizona Const. Art. 2, § 4, A.R.S.

We first consider petitioners' complaint that the juvenile code does not provide for an appeal. The question was decided adversely to them in Ginn v. Superior Court, in and for County of Pima, 1 Ariz.App. 455, 404 P.2d 721. We agree with the scholarly opinion of our appellate tribunal and hold that there is no right of appeal from a juvenile court order, nor does the general appeal statute apply, § 12–2101 A.R.S.; 404 P.2d at 724. We note that our Constitution gives to the superior court *exclusive original jurisdiction in all proceedings and matters affecting delinquent children,* Article 6, § 15.

Section 8–201(6) defines a delinquent child as one who has violated a law, regulation or ordinance; is uncontrolled by his parent because incorrigible, wayward or habitually disobedient; habitually truant from school or home or habitually deports himself so as to injure or endanger the morals or health of himself or others. Section 8–222 provides that the powers of the court may be exercised upon the filing of a petition alleging that the child is delinquent but not the facts upon which the allegation is based. The court may order that a petition be filed if, after a preliminary inquiry, it determines that formal jurisdiction over the child should be acquired. Once jurisdiction attaches the court may compel the production of the child and the attendance of the parents or guardian, Section 8–224. This provision makes it clear that the parent or guardian must be notified of the hearing by personal service if practical. The hearing must be held informally in chambers, Const. Art. 6, § 15; § 8–229, and the judge "shall make such order for the

commitment, custody and care of the child as the child's welfare and the interests of the state require", § 8–231. Once acquired, the jurisdiction of the court over the child continues until he is 21 years of age unless sooner discharged, § 8–236. An adjudication by the court upon the status of the child shall not impose any civil disability, nor shall the child be deemed a criminal. Moreover, the adjudication is not a conviction and evidence given in the juvenile court is inadmissible in any other court, § 8–228. Unless the child is convicted of an offense in the interim, the court must destroy its records 2 years after the termination of probation or discharge from an institution, § 8–238.

■■■■ We approach this challenge to the juvenile code aware of our duty to give to the language of all statutes a meaning that will render them constitutional if this can reasonably be done. State v. Locks, 91 Ariz. 394, 372 P.2d 724. We will not declare a legislative act unconstitutional unless satisfied beyond a reasonable doubt of its invalidity. State Board of Technical Registration v. McDaniel, 84 Ariz. 223, 326 P.2d 348. In short, our duty is to reconcile the language of a statute with the constitutional provisions if possible. Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808. Although the constitutional guarantee that no person shall be deprived of life, liberty or property without due process of law, Art. 2, § 4, is not expressly implemented in the juvenile

code, we have held a statute valid in other situations though we had to imply into the language a necessary element of the problem. In State v. Krug, 96 Ariz. 225, 393 P.2d 916 we held constitutional the "perjury by contradictory statements" statute, § 13–562, A.R.S. though it failed to expressly use the word "willfully", a necessary element of the offense. We said the element was implicit in the statute. Similarly, our constitution guarantees due process of law and the specific implementation of that concept impliedly exists in the juvenile code. We have held that any statutory provision for a hearing means a hearing in a substantial sense meeting the requirements of due process. State v. Essman, 98 Ariz. 228, 403 P.2d 540; McGee v. Arizona State Board of Pardons and Paroles, 92 Ariz. 317, 376 P.2d 779; Forman v. Creighton School District No. 14, 87 Ariz. 329, 351 P.2d 165. The problem is ascertaining the particular elements which constitute due process in a juvenile hearing.

All jurisdictions have juvenile codes and all provide for less than the full set of due process guarantees available in a criminal proceeding. Yet, the overwhelming majority of courts have expressly or impliedly recognized the statutes to be constitutional. Harris v. State, 24 Ala.App. 59, 129 So. 795; Ex parte Daedler, 194 Cal. 320, 228 P. 467; Lindsay v. Lindsay, 257 Ill. 328, 100 N.E. 892, 45 L.R.A.,N.S., 908; Egoff v. Board of Children's Guardians, 170 Ind.

238, 84 N.E. 151; Farnham v. Pierce, 141 Mass. 203, 6 N.E. 830; Mill v. Brown, 31 Utah 473, 88 P. 609; In re Lewis, 51 Wash. 2d 193, 316 P.2d 907. For a compilation of early decisions upholding constitutionality of juvenile statutes and denying that restraint of infants pursuant to juvenile hearings impairs their constitutional rights see In re Sharp, 15 Idaho 120, 96 P. 563, 18 L.R.A.,N.S., 886.

▆▆▆ We are aware of the tide of criticism inundating juvenile proceedings. The major complaint deals with the informal, nonadversary procedure for determining delinquency rather than the treatment rendered after a finding of delinquency. On the other hand, juvenile courts do not exists to punish children for their transgressions against society. The juvenile court stands in the position of a protecting parent rather than a prosecutor. It is an effort to substitute protection and guidance for punishment, to withdraw the child from criminal jurisdiction and use social sciences regarding the study of human behaviour which permit flexibilities within the procedures. The aim of the court is to provide individualized justice for children. Whatever the formulation, the purpose is to provide authoritative treatment for those who are no longer responding to the normal restraints the child should receive at the hands of his parents. The delinquent is the child of, rather than the enemy of society and their interests coincide. This is the basis for the general rejection of the criminal law adversary proceeding. Generally, see Handler, The Juvenile Court and the Adversary System: Problems of Function and Form, 1965 Wis. L.R. pp. 7–12; Paulsen, The Juvenile Court and the Whole of the Law, 11 Wayne L.R. 597; Molloy, Juvenile Court—A Labyrinth of Confusion for the Lawyer, 4 Ariz.L.R. 1, 5. We have stated that the purpose of our juvenile statute is to redirect and rehabilitate the child. State v. Shaw, 93 Ariz. 40, 378 P.2d 487. Of course, the parents' right of custody is natural and legal. The court should not remove a child from its parents except for the gravest of reasons. The informality referred to in A.R.S. § 8–229 merely authorizes the court to disregard technical matters of procedure not affecting the fundamental right to due process of law. Arizona State Dept. of Public Welfare v. Barlow, 80 Ariz. 249, 296 P.2d 298.

▆▆▆ The conceptual basis for the juvenile code is the parens patriae doctrine where the state acts in loco parentis to the child. However, the Montana Supreme Court has said and we agree that:

"This court does not wish to permit the parens patriae doctrine to prevent a fair hearing. The parens patriae doctrine is intended to benefit and protect both juvenile delinquents and the public, but the doctrine cannot serve as justification for illegal detention no

matter how labelled." State v. Johnson, 141 Mont. 1, 374 P.2d 504, 506.

■ Good intentions do not justify depriving a child of due process of law. "Otherwise, all that is necessary to justify a despotism is to make sure it intends to be benevolent." Waite, How Far can Court Procedure Be Socialized Without Impairing Individual Rights, 12 J. Crim.L. & C. 339, 341. Fairness is not inimical to the proper treatment of juveniles. Justice is as good for them as it is for adults.

Those who criticize the juvenile statutes object to the great power of the judge. But that power is necessary to achieve the individualized consideration of the child which is as valid an objective today as it was 60 years ago when the juvenile court movement began. Dean Pound, speaking of family court procedures, said:

"Instead of being wholly contentious the proceeding in the family court division should be investigatory—directed to determining the best disposition or adjustment of the family situation as a whole and seeking a complete disposition thereof. It may involve contentious trial of certain issues of fact. But the proceeding as a whole should not be primarily and characteristically contentious." Pound, The Place of the Family Court in the Judicial System, 10 Crim. & Del. 532, 542.

At the 1960 UN Seminar on human rights and the criminal law it was agreed that in all its functions, retributive, deterrent, reformative and educative—it was possible for the criminal law to be defined and applied so as to conflict with human rights. Any one of these purposes carried to the extreme could lead to serious and unjustified infringements of human rights. Morris & Howard, Studies in Criminal Law 157 (64). The point is that the law, juvenile or otherwise, is no better than its administrators. Of course, it is legitimately argued that properly worded statutes decreases the opportunity for less able administrators to prejudice our citizens. In 1961 California adopted a juvenile code which attempts to provide a practical balance between civil due process for the infant and the informal court atmosphere which minimizes the harmful effects of the proceeding and encourages the minor's receptivity to treatment. In re Mikkelsen, 226 Cal.App.2d 467, 38 Cal.Rptr. 106. Our task is to determine the procedural due process elements to which an infant and his parents are entitled in a juvenile hearing and decide whether our statute may be construed to include them. Then we must decide whether petitioners and their son were deprived of those rights to their prejudice.

■ The parent or guardian must be notified of the hearing, and anyone whose rights may be affected by the court's determination must be notified, In re Mendevil, 21 Ariz. 586, 193 P. 17 and In re Johnson, 86 Ariz. 297, 345 P.2d 423, and

such notice must be given a reasonable time prior to the hearing. Moreover, the child and parent must be informed of the alleged act of delinquency before an adjudication of delinquency is made.

This brings us to petitioners' second assignment of error alleging that the juvenile court, in fact, denied them and Gerald procedural due process of law because of the informal manner in which the hearing was conducted.

▮ The conflict between the legal profession's inculcated traditional due process guarantees and the sociologist's concept of proper treatment for the juvenile delinquent has understandably created divergent decisions by appellate courts. Many cases have generally held that the full array of criminal procedural safeguards are not required in juvenile proceedings. People v. Dotson, 46 Cal.2d 891, 299 P.2d 875; People ex rel. Weber v. Fifield, 136 Cal.App.2d 741, 289 P.2d 303; Akers v. State, 114 Ind. App. 195, 51 N.E.2d 91; People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 86 A.L.R. 1001; In re Holmes, 379 Pa. 599, 109 A.2d 523. But the decisions are in conflict concerning particular procedural safeguards. It has been held that a general allegation of delinquency, without stating the facts supporting the allegation, is a sufficiently definite accusation. In re Bentley, 246 Wis. 69, 16 N.W.2d 390; In re Duncan, Ohio App., 107 N.E.2d 256. That is the requirement of our statute, A.R.S. § 8–222. Other juris-

dictions have decided that due process requires more detailed notice. Wheeler v. Shoemake, 213 Miss. 374, 57 So.2d 267. As we said above, the juvenile and his parents or guardian are undoubtedly entitled to know the facts upon which the allegation of delinquency is based. On the other hand, we have held that the policy of the juvenile law is to hide youthful errors from the full gaze of the public and bury them in the graveyard of the forgotten past. State v. Guerrero, 58 Ariz. 421, 120 P.2d 798. We think the proper balance between the infant's right to know the facts of the charge against him and the state's interest in avoiding or erasing the stigma of delinquency is best struck by the following rule: the infant and his parent or guardian will receive a petition only reciting a conclusion of delinquency. But no later than the initial hearing by the judge, they must be advised of the facts involved in the case. If the charges are denied, they must be given a reasonable period of time to prepare.

▮ Some courts have held that the infant is not entitled as of right to the appointment of counsel or to be represented. In re Holmes, supra; Akers v. State, supra; People v. Dotson, supra; People ex rel. Weber v. Fifield, supra. But other courts have held otherwise. Ex parte State ex rel. Echols, 245 Ala. 353, 17 So.2d 449; In re Contreras, 109 Cal.App.2d 787, 241 P.2d 631; see Cal. Welfare & Inst'ns Code

§§ 500–914; N.Y. Family Court Act §§ 249, 741. There is disagreement as to whether the court must advise the infant that he has a right to counsel. Some courts say no, Robinson v. State, Tex.Civ.App., 204 S.W.2d 981, and others say yes. Shioutakon v. District of Columbia, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R. 2d 686. We have held that the parents of an infant in a juvenile proceeding cannot be denied representation by counsel of their choosing. Arizona State Dept. of Public Welfare v. Barlow, supra. But a child has different rights and disabilities. State v. Shaw, supra. Section 8–221 A.R.S. provides that when a police officer arrests a child he must immediately notify a probation officer and make such disposition of the child as the probation officer directs. Section 8–204, subd. C(1) A.R.S. states that the probation officer shall look after the interests of neglected, delinquent and dependent children. Paragraph 3 of subsection C requires him to be present in court when cases are heard concerning children and represent their interests. Of course, the juvenile court always has discretion to allow representation. Many times an attorney may be helpful to the court, particularly where he has the confidence of parents and child and understands the seriousness of the hearing. But we do not think due process requires that an infant have a right to counsel. The parent and the probation officer may be relied upon to protect the infant's interests. If, however, the court discerns any conflict between the parent and child, it has discretion to select an attorney to represent the infant.

Courts have held that the infant does not have a privilege against self-incrimination or a right to be advised of the privilege, In re Santillanes, 47 N.M. 140, 138 P.2d 503; In re Holmes, supra, but the contrary has been held. Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269, 151 A.L.R. 1217. We think the necessary flexibility for individualized treatment will be enhanced by a rule which does not require the judge to advise the infant of a privilege against self-incrimination.

It has been held that the infant has no right to confront the witnesses against him. Cinque v. Boyd, 99 Conn. 70, 121 A. 678; In re Holmes, supra. We think the relevancy of confrontation only arises where the charges are denied.

Some courts have felt obliged to apply the usual rules of evidence when deciding whether the infant committed the alleged act of delinquency, In re Contreras, supra; People v. Fitzgerald, 244 N.Y. 307, 155 N.E. 584, including the necessity of sworn testimony, In re Mantell, 157 Neb. 900, 62 N.W.2d 308, 43 A.L.R.2d 1122, and the exclusion of hearsay, In re Green, 123 Ind.App. 81, 108 N.E.2d 647; State ex rel. Palagi v. Freeman, 81 Mont. 132, 262 P. 168. But other courts have held the

admissibility of hearsay proper, Campbell v. Siegler, 162 A. 154, 10 N.J.Misc. 987; In re Bentley, 246 Wis. 69, 16 N.W.2d 390, and sworn testimony unnecessary, State in Interest of Christensen v. Christensen, 119 Utah 361, 227 P.2d 760. We think the sounder rule allows the judge to consider hearsay though the hearing is contested, but sworn testimony must be required of all witnesses including police officers, probation officers and others who are part of or officially related to the juvenile court structure. But the hearsay upon which the judge can rely must be of a kind on which reasonable men are accustomed to rely in serious affairs. Reynolds Metals Co. v. Industrial Commission, 98 Ariz. 97, 402 P.2d 414.

The applicable burden of proof varies from a mere preponderance as in a civil case, State ex rel. Berry v. Superior Court, 139 Wash. 1, 245 P. 409, 45 A.L.R. 1530, to proof beyond a reasonable doubt, Jones v. Commonwealth, 185 Va. 335, 38 S.E.2d 444.

A juvenile court proceeding is not a criminal case. It is a proceeding affecting children and concerns the need for some disposition to be made of a child whose welfare in relation to society is seriously involved. It may arise out of dependency, neglect or delinquency. Ariz. Const. Art. 6, § 15. The delinquency may or may not involve commission of a crime by the child. The juvenile court may either suspend or refuse to suspend criminal prosecution when a child is accused of committing a crime. If it suspends criminal prosecution and retains jurisdiction, the juvenile court determines whether the child has committed a crime, not for the purpose of finding the child guilty or not guilty, but for the purpose of determining that the child has committed an act of delinquency. Acknowledging the non-criminal nature of the proceeding, yet mindful of the fact that a parent may be deprived of his child and the child of his liberty, we think the juvenile judge must be persuaded by clear and convincing evidence that the infant has committed the alleged delinquent act.

Petitioners complain that no transcript of either juvenile hearing was prepared and the record of the court did not contain findings of fact upon which the conclusion of delinquency was based. They argue that an intelligent appeal cannot be taken without a complete transcript and record. The purpose of a transcript, in some instances, is to support an appeal. But there is no right to an appeal. Furthermore, the evidence adduced at a juvenile hearing is of a confidential nature because it is inadmissible in other courts, A.R.S. § 8–228, and the record must be destroyed after a prescribed period of time, A.R.S. § 8–238. We think the juvenile court has discretion to order or deny the taking of a transcript.

Applying all of the above requirements to the hearing under review, we find that petitioners were not denied due process of law. Mrs. Gault knew the exact nature of the charge against Gerald from the day he was taken to the detention home. She and Gerald appeared at the first hearing without objection. Mr. and Mrs. Gault, together with Gerald, appeared at the second hearing before Judge McGhee without objection. Petitioners knew they could have retained counsel, called witnesses and cross examined Probation Officer Flagg.

Petitioners complain that the judge failed to advise them and Gerald of the possible consequences of a finding of delinquency. We know of no such rule. Nor does the concept of a fair hearing suggest a need for the rule. In any event, the record indicates that petitioners were advised by Judge McGhee in February 1964 when Gerald was found delinquent on another charge that if he came before the court again he might be committed.

Petitioners claim there was insufficient evidence to support a finding of delinquency. We note that the juvenile court had acquired jurisdiction over Gerald in February, 1964 when Judge McGhee placed him on six months probation. Section 8-236 A.R.S. states that once jurisdiction is acquired it continues until the child is 21 years of age unless sooner discharged.

The six month probation period had not terminated when Gerald came before Judge McGhee in June 1964. Therefore, the Judge could have committed Gerald without any further showing of delinquency if he decided Gerald's welfare and the interests of the state so required, A.R.S. § 8-231. In any event, at the habeas corpus hearing Judge McGhee testified he found that Gerald violated A.R.S. § 13-377, the vulgar or obscene language statute, A.R.S. § 8-201, subd. 6(a) which states that a violation of the law is delinquency and (d) defining a delinquent as one who habitually deports himself so as to endanger his morals or health. There is substantial evidence in the record to support the finding that Gerald was a delinquent child.

Petitioners contend the juvenile court erred in removing Gerald from their custody upon the single ground that he was delinquent. They argue we establish a rule which would require, in addition to a finding of delinquency, a finding of the parents' unfitness to retain custody before they could be deprived thereof. We cannot agree. We emphasize the fact that the child's welfare is the primary consideration before the juvenile court and the judge will make such order as the child's welfare and the interests of the state require. It is apparent that the best interest of a child and the fitness of his parent are not necessarily inter-dependent. In State in Interest of Christensen v. Chris-

tensen, 119 Utah 361, 227 P.2d 760, the court quoted from an earlier decision [In re State, in Interest of Bennett, 77 Utah 247, 293 P. 963] where it said:

"'It may well be that parents are generally fit to have the custody of their children, and yet they may be unable to prevent one or more of their children from committing acts of delinquency * * * In such case the juvenile court may commit such juvenile to the industrial school when the best interests of the juvenile or the protection of society demand such commitment.'" 227 P.2d at 762.

Other recent cases which hold that the juvenile court may commit a delinquent child without first deciding the unfitness of the parents are State v. Johnson, supra, and Spangler v. Breashears, Tex.Civ.App., 359 S.W.2d 206.

Petitioners claim the infant was unlawfully arrested and detained because A.R.S. § 13–1403 allows arrest for a misdemeanor without first obtaining a warrant only if it is committed in the presence of the officer. The arrest must be made immediately or on fresh pursuit. The general law of arrest is usually held to be inapplicable in juvenile proceedings. State ex rel. Palagi v. Freeman, supra; Mill v. Brown, supra; Lindsay v. Lindsay, supra; Wheeler v. Shoemake, supra. Furthermore, A.R.S. § 8–221 provides the procedure for arrest of a child. It states that a police officer shall forthwith notify the probation officer upon arresting a child and shall make such disposition of the child as the probation officer directs, State v. Shaw, supra. The article also states that this "shall not be construed to prohibit a peace officer from taking into custody a child who is found violating a law or ordinance, who is reasonably believed to be a fugitive from his parents or from justice, or whose surroundings are such as to endanger his health, morals or welfare unless immediate action is taken."

Petitioners' other assignments of error deal with rulings by the court during the habeas corpus hearing. They complain that the cross examination of Judge McGhee was improperly restricted. They also contend there was insufficient evidence to support the conclusion of the legality of Gerald's detention. We have considered these assignments and find them to be without merit.

The order of the Maricopa County Superior Court is in all respects affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and McFARLAND, JJ., concur.