STATE, Respondent, vs. SCHOLL, Appellant.
STATE, Respondent, vs. POLLAND, Appellant.

*May 4—May 21, 1918.*

*Juvenile courts: Proceedings not criminal: Constitutional law: Trial by jury: Due process of law: Unsworn testimony: Jurisdiction: Designation of judge.*

1. Proceedings under the juvenile court law are in no sense criminal proceedings, nor is the result in any case a conviction or punishment for crime. They are simply investigations by the state into conditions which if unchecked may lead to the making of its children into criminals instead of law-abiding citizens. The constitutional guaranty of trial by jury is therefore inapplicable.

2. The constitutional requirement of "due process of law" does not prevent in such proceedings the use of investigation and unsworn testimony in ascertaining the essential facts. [It may be advisable, however, in a case where it seems best to take the child permanently from its parents and consign it to the care of an institution, that sworn testimony be taken and the essential facts be thus proven before the final order is made, in order to avoid any question as to the validity of such order.]

3. The so-called "juvenile court" is not in fact a separate and in-

dependent court, but is rather a jurisdiction which is to be exercised in his court for a stated period by a judge selected by and from the judges of the courts of record in the county.

4. The power thus given to the judges of a county to designate one of their number to exercise such jurisdiction is an administrative duty which may properly be imposed upon them.

APPEALS from a judgment of the county court of Milwaukee county: J. C. KAREL, Judge. *Affirmed.*

The acting judge of the juvenile court of Milwaukee county placed *Herman Scholl* and *Max Polland,* boys ten and eleven years of age respectively, in charge of the probation officer of the court as delinquents, under the provisions of the juvenile court law, and an appeal was taken by each.

The chief contention of the appellants is that the juvenile court law is unconstitutional because it denies a jury trial and authorizes conviction of crime without due process of law, and perhaps for other reasons. In order that this question may be understood it will be necessary to state the substance of the law, the same being found in sec. 573—1 to 573—10 inclusive of the Statutes. Sec. 573—1 defines dependent, neglected, and delinquent children for the purposes of the act. It is only necessary here to insert the definition of a delinquent child, which is as follows:

"2. The words 'delinquent child' shall include any girl under the age of eighteen years and any boy under the age of seventeen years, who violates any law of this state, the penalty for which is not imprisonment in the state prison, or who violates any city or village ordinance; or who is incorrigible; or who knowingly associates with thieves, vicious or immoral persons; or who is growing up in idleness or crime; or who knowingly patronizes any place where any gaming device is or shall be operated; or who knowingly visits, or enters a house of ill repute; or who patronizes, visits or enters any stall saloon, or wine room, or any saloon frequented by men or women of bad repute; or who attends, visits or enters any dance held in any room or hall in connection with a saloon, unless accompanied by parents or legal guardian; or who loafs or congregates with groups or gangs of other

boys at or about any railroad yard or tracks; or who habitually uses obscene, vulgar or profane language, or is guilty of immoral conduct in any public place, or about any schoolhouse; or who is habitually truant or habitually insubordinate in any school."

Sec. 573—2 provides (1) for the designation in each county by the judges of the several courts of record in such county, at intervals not exceeding one year, of one or more of their number to hear all cases coming under the act; (2) that the findings of the court shall be entered in a record book and the court called for convenience the "juvenile court" or the "juvenile branch of the court," the clerk and the stenographer of the court of which the judge is a member being the clerk and stenographer respectively of the "juvenile court" (with certain exceptions not material here), all courts of record in the state being given concurrent jurisdiction with the circuit courts in all cases coming under the act; (3) for the appointment, compensation, and removal of probation officers, there being a chief probation officer provided for in counties having a population of 150,000; (4) for the trial of cases under the act by a jury of six on demand of any person interested, or on the judge's own motion.

Subsequent sections provide for (5) the duties and powers of probation officers, among which are "to make such investigations as may be required by the court; to be present in court in order to represent the interests of the child, when the case is heard; to furnish the court such information and assistance as the judge may require, and to take such charge of any child before and after trial as may be directed by the court;" (6) for the commencement of proceedings in any case of a neglected, dependent, or delinquent child by the filing of a verified petition setting forth the facts, signed by a reputable resident of the county; (7) for the issuance of a summons to the person having custody of the child, and its parents, requiring them to appear with the child, and for the hearing and disposal of the matter upon the return of the

summons with the child in a summary manner; (8) for the commitment of a child under sixteen years old found to be dependent or neglected to the care and custody of some state or county institution as provided by law, or to some incorporated association organized for the purpose of receiving such children, also for the temporary care and custody of such child in the care of the probation officer or some suitable person or institution for a period not exceeding one year; (9) for the commitment of a child found to be delinquent to the care of a duly appointed probation officer, allowing the child to remain at home subject to visitation by and regular report to the probation officer, and to return to the court for further proceedings on the original petition if necessary. Other provisions are made so that delinquent children may be placed in a family, home, or institution, or boarded out in a home, or committed to an industrial school or institution.

It appears by the record returned that a police officer, after investigation by himself and Probation Officer Killey, made a verified complaint in the present case and presented the same to the juvenile court, County Judge JOHN C. KAREL presiding, charging that eighteen boys (including the boys in question), ranging in age from ten to fourteen years, during October and November, 1917, loitered about the yards of the Chicago, Milwaukee & St. Paul Railway in Milwaukee, jumped on and off moving freight trains, and were incorrigible, and prayed that the court inquire into the delinquency of the boys; that the parents of the children were summoned and a hearing was had before Judge KAREL November 23, 1917, all the boys being present, and a number of the parents, among them the father of the appellant *Scholl;* that the probation officer, who had investigated the matter, was present, and stated that the boys individually and collectively had confessed to him that they were frequently about the railroad tracks; and that a number of the boys were already in probation and under his care for former de-

linquencies. No sworn testimony was taken, and no question seems to have been raised as to the main fact, namely, that the boys frequented the railroad yard and cars, except that the appellant *Scholl* denied that he frequented the railroad tracks and claimed that he was only at the foot of a slight elevation adjoining the tracks on one occasion and was helping his friend *Polland* pick up coal which rolled down the hill from the cars. Two other boys, however, stated that they were on a freight car throwing off coal, and that *Scholl* and *Polland* were picking it up.

The result of the hearing was that the boys were placed on probation under Mr. Killey. Some were detained at the detention home for a few days, but the appellants *Scholl* and *Polland* were simply placed under probation and allowed to go home.

For the appellants there was a brief by *Joseph G. Hirschberg,* attorney, and *Horace B. Walmsley,* of counsel, both of Milwaukee, and oral argument by *Mr. Hirschberg.*

For the respondent there was a brief by the *Attorney General, Winfred C. Zabel,* district attorney of Milwaukee county, and *F. F. Groelle,* assistant district attorney, and oral argument by *Mr. Groelle.*

WINSLOW, C. J. A democracy cannot long exist unless the great body of its voters be not merely intelligent, but moral. The children of today are the voters of tomorrow. It is the greatest concern of the State, therefore, that its children be preserved from vicious habits, for the vicious child is the father of the vicious man.

The law before us may be said to be founded on these propositions.

Its aim is to keep something like a parental watch over children who are neglected or wayward or both, and hence are subject to vicious influences; to bring them and their parents or guardians before an experienced and humane

judge who shall inquire into the situation, not with the awe-inspiring and frigid methods of a criminal court, but informally and intimately, like a wise and gentle elder brother, or like the good Samaritan of holy writ, and who shall, when fully advised, do that which is best for the child's future, either by way of sending it to an institution or by providing for kind and tactful but in no sense degrading surveillance for a limited time at home.

It would be a public misfortune to set aside a law so designed even though it were not perfect in its details. Only the most weighty and convincing considerations could justify such action, and we do not think they exist here.

The serious claims made will be briefly considered. It is said the constitutional guaranties of trial by jury and due process of law are denied and in this connection reliance is placed on *Robinson v. Wayne Circuit Judges,* 151 Mich. 315, 115 N. W. 682.

It is sufficient to say on this point that the proceedings under this law are in no sense criminal proceedings, nor is the result in any case a conviction or punishment for crime. They are simply statutory proceedings by which the state, in the legitimate exercise of its police power, or, in other words, its right to preserve its own integrity and future existence, reaches out its arm in a kindly way and provides for the protection of its children from parental neglect or from vicious influences and surroundings, either by keeping watch over the child while in its natural home, or, where that seems impracticable, by placing it in an institution designed for the purpose.

In the *Robinson Case* the law provided for fine and imprisonment in case of a finding of delinquency, and the Michigan court held the law invalid because it provided for the trial of criminal actions before a jury of six. In all other respects the law there in question (which in its essentials was quite similar to the law in question here) was fully sustained.

It is unnecessary to go outside of our own state for authority on this subject. The power of the state to exercise such control over the child is fully vindicated by Chief Justice RYAN in the case of *Milwaukee Ind. School v. Milwaukee Co.* 40 Wis. 328, and it is there distinctly and eloquently held that such proceedings as these are not in any sense criminal proceedings. They are in fact simply investigations by the state into serious conditions which if unchecked may lead to the making of its children into criminals instead of law-abiding citizens.

The same considerations apply with equal force to the contention that the proceedings in question do not constitute due process of law.

In such investigations we know of no rule which prevents the use of investigation and unsworn testimony in ascertaining the essential facts. The desideratum is to obtain, by the use of kindness and sympathy, the confidence of the child and of its parents if possible, to convince them that the judge and probation officer are friends and not the avengers of offended law. Good results are far more likely to be obtained in this way by the use of informal methods than by bringing them into a court conducted with the form and ceremony attendant upon trials for crime, where all the proceedings suggest that the law is about to be invoked to inflict punishment upon hardened malefactors.

It may be advisable, in cases where it seems best to take the child permanently from its parents and consign it to the care of an institution, that sworn testimony be taken and the essential facts thus proven before the final order is made, because in such case the natural right of the parent to the custody of the child is invaded and it would be desirable to avoid any question as to the validity of the order. We intimate no opinion on this point. It does not arise here. In the present case the boys were simply put on probation, and we regard the proceedings taken as entirely sufficient, al-

though no witness was sworn. The investigations of the probation officer and the facts brought out by the kindly questioning of the judge upon the hearing substantiate the fact of delinquency fully as well as sworn testimony.

As matter of fact there is no "juvenile court" in the sense of a separate and independent court; it is so called simply for convenience and is a jurisdiction rather than a distinct court. As will be seen by reference to the act, all the courts of record of the state are endowed with the necessary jurisdiction to enforce it, and the judges of such courts in each county from time to time select one of their number to exercise this jurisdiction for a stated period. If he be a municipal judge the juvenile court is in fact the municipal court while he is presiding, if he be a county judge it is the county court, and if he be a circuit judge it is the circuit court. This seems somewhat anomalous to us because we have been so long accustomed to the rigidity of our court system, but no constitutional or serious practical objection can be successfully urged against it. It is a common-sense step toward greater elasticity in the administration of the law by the courts which will doubtless be followed by many more. The power given to the judges of a county to designate one of their number to perform the delicate duties of the office is clearly an administrative duty which may be properly imposed upon the judiciary because such appointment is helpful if not necessary in the performance of the judicial duties of the various courts. *In re Appointment of Revisor,* 141 Wis. 592, 124 N. W. 670.

Laws similar in character to the one before us have been recently sustained in a number of states. One of the most recent cases is *Lindsay v. Lindsay,* 257 Ill. 328, 100 N. E. 892, 45 L. R. A. n. s. 908, where the subject is fully discussed with full citation of recent authorities.

*By the Court.*—Judgment affirmed on both appeals, without costs.