HARRY, Appellant, vs. THE STATE, Respondent.

*October 11—November 14, 1944.*

*Samuil Nissenbaum* of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General, James J. Kerwin,* district attorney of Milwaukee county, and *Alfred R. Gandrey,* assistant district attorney, and oral

argument by *Mr. Gandrey* and *Mr. William A. Platz,* assistant attorney general.

BARLOW, J.   Stephen Harry was adjudged to be a delinquent child under sec. 48.01 (1) (c), Stats., which provides:

"The words 'delinquent child' shall mean any child under the age of eighteen years who has violated any law of the state or any county, city, town or village ordinance; or who by reason of being wayward or habitually disobedient, is uncontrolled by his parent, guardian, or custodian; or who is habitually truant from school or home; or who habitually so deports himself as to injure or endanger the morals or health of himself or others. . . ."

The court found this boy habitually so deported himself as to injure or endanger the morals or health of himself or others.   Appellant contends, (1) that the court never obtained jurisdiction of the subject matter as the petition was filed without previous court order, in violation of sec. 48.06 (1), Stats., and that the petition failed to allege facts required; (2) that if the court acquired jurisdiction, the same terminated when the order revoking the commitment to the Norris Foundation was entered and that any commitment thereafter was beyond authority of the court; (3) the facts are not sufficient to sustain the determination.

Ch. 48, Stats., was enacted to enable the courts to have control of three types of unfortunate children, therein described as "neglected," "dependent," and "delinquent" children.   Sec. 48.07 (4), Stats., more particularly sets forth the intent of the chapter as follows:

"It is declared to be the intent of this chapter that each child coming within the jurisdiction of the juvenile court shall receive such care, guidance and control, preferably in his own home, as will conduce to the child's welfare and the best interests of the state; and when such child is removed from his own family, to secure for him custody, care and discipline as

'nearly as possible equivalent to that which should have been given by his parents."

To carry out this intent specific statutory powers of the juvenile court are likewise great. Sec. 48.07 (1) Stats., provides:

"If the court shall find that the child is delinquent, neglected or dependent, it may:

"(a) Place the child on probation or under supervision in his own home or in the custody of a relative or other fit person, upon such terms as the court shall determine; or

"(b) Commit the child to a suitable public institution or to a suitable child-welfare agency licensed by the state department of public welfare and authorized to care for children or to place them in suitable family homes. The terms and duration of such commitments, other than to the industrial school for boys or the industrial school for girls, shall in each case be fixed by the court, subject to modification by the court on its own motion or otherwise; provided that the court upon application before commitment may consider the wishes of the parent, guardian or custodian in the selection of a suitable institution or agency; or

"(c) Make such further disposition as the court may deem to be for the best interests of the child. . . ."

Passing upon the purposes and objects of the Juvenile Court Act in *State v. Scholl* (1918), 167 Wis. 504, 509, 167 N. W. 830, it was said:

"It is sufficient to say on this point that the proceedings under this law are in no sense criminal proceedings, nor is the result in any case a conviction or punishment for crime. They are simply statutory proceedings by which the state, in the legitimate exercise of its police powers, or, in other words, its right to preserve its own integrity and future existence, reaches out its arm in a kindly way and provides for the protection of its children from parental neglect or from vicious influences and surroundings, either by keeping watch over the child while in its natural home, or, where that seems impracticable, by placing it in an institution designed for the purpose."

And in *State v. Zirbel* (1920), 171 Wis. 498, 499, 177 N. W. 601, after approving the above statement, the court said:

"The proceedings are not to be conducted according to the practice and procedure governing actions. The court is to act in place of a parent, and necessarily has great power which is not to be restricted by the rules of procedure followed in criminal courts."

We shall proceed to examine appellant's contentions in the light of the foregoing statutes and decisions. It is contended that no preliminary inquiry was made and that the court did not authorize a petition to be filed as required by sec. 48.06 (1), Stats., which provides:

"Whenever any person gives to the juvenile court information tending to show that a child is neglected, dependent or delinquent, or that such child has committed any act or has pursued a course of conduct which if found true would make him a delinquent child, the court shall make preliminary inquiry to determine whether the public interests or the interests of the child require that formal jurisdiction should be acquired, and may authorize a petition to be filed. . . ."

The probation officer investigated this matter at the time the child was arrested and brought to the detention home, and thereafter filed the petition without an order of the court. Sec. 48.02, Stats., provides for the appointment of probation officers in counties whose population is over five hundred thousand, and this case arises in Milwaukee county, which we take judicial notice has a population of over five hundred thousand. Sub. (5) thereof provides:

"The probation officers appointed pursuant to this section shall constitute the probation department of the court. Whenever there is a chief probation officer the probation department shall be under the supervision of the chief probation officer, who shall have the power to perform all the duties of the court, except those reserved to the judge, or to the court after filing of the petition. . . ."

Milwaukee county has a chief probation officer, and the investigation was conducted under his direction. As a result of this investigation he authorized the clerk of court to issue a petition charging Steve Harry with being a delinquent child. The statute authorizes this procedure on his part prior to the time of the filing of the petition. From the time the petition was filed the matter was handled by the court, as directed by statute. The petition was signed by one of the probation officers who had made the investigation and was familiar with the facts, and the language of the statute was used in charging this boy with being a delinquent child. It is contended that this fails to comply with the statutory requirement that the petition must briefly allege the facts which bring the child within the definition of the charge. The petition does allege that the child habitually deports himself so as to injure or endanger the morals or health of himself or others. This allegation is in the words of the statute and it is not considered that the petitioner is to set forth in detail the various acts of the child bringing him within the statute. In the proceedings the parents are summoned and are requested to be in court. The matters are handled more or less informally, unless a jury is demanded, as the court is desirous of obtaining all the facts from every person having an interest in the child. It is considered that the petition is sufficient and that it was filed in accordance with law, thus giving the court jurisdiction.

After several hearings the court adjudged Stephen Harry to be a neglected child, and on December 20, 1943, committed him to the Norris Foundation. A short time thereafter the child left this home without the knowledge or consent of the court or his father. He went to the home of his father and from there to the home of an aunt at Barneveld, Wisconsin. On January 14, 1944, a further hearing was held. The court was informed that the child had gone to the home of his aunt. After talking with the father, his attorney, and the probation

officer, the court concluded that he desired further information about the aunt and the home that she could provide for the child and held the matter open to obtain this information. Stephen Harry had been committed to the Norris Foundation, which commitment was in full force and effect. If the child was to be placed with the aunt it was necessary to have this commitment revoked, and the court proceeded to revoke it at that time. It is now contended that by revoking the commitment the court lost jurisdiction of the child, and that a new petition was necessary to give the court jurisdiction for further proceedings. We are unable to agree with appellant's position. The court at no time made an order discharging the defendant from the jurisdiction of the court or releasing him. Jurisdiction had been obtained on December 6, 1943. The court has authority under the law to change the place of commitment as the interests of the child may require. The revocation of the commitment to the Norris Foundation in no way prevented the court from placing the child with the aunt, and permitting him to remain there until a complete investigation was made, which was equivalent to temporarily committing the child to this home. It could in no way deprive the court of jurisdiction. When a court has once obtained jurisdiction of a child under this chapter, such jurisdiction continues until the child has passed the age limit provided in the chapter, or has been otherwise discharged by an order of the court. This must necessarily follow if the purpose and intent of the chapter is to be carried out.

The next question is whether or not the facts warrant the determination that Stephen Harry was either a neglected or delinquent child. Counsel for appellant relies on *In re Alley* (1921), 174 Wis. 85, 182 N. W. 360, where a boy twelve years old accompanied his schoolmates to a picnic against the protests of the teacher, and attached a fuse to a dynamite cap, causing it to explode in order to frighten the children and the teacher, and then attached a fuse to a second

cap and when picked up by another child serious injuries resulted. The boy was also absent from school for a number of days, but this was with the knowledge and at the direction of his father. There was no proof of any other misconduct on the part of the boy. The court, in holding that he was not delinquent under the statute, said that dangerous situations have a well-known fascination for children and that there was nothing to indicate that the boy intended to do more than frighten his schoolmates and their teacher. If Steve Harry had done nothing more than to take his gun and join the party of boys to do some hunting and the accident had occurred, it could well be compared with the *Alley Case,* but here we have a boy who was a party to stealing gasoline-ration stamps and a steel tape from an automobile, even though he did not share in the proceeds from the stolen property. He was arrested at the time and later discharged and then continued to associate with the boy who was with him when the property was stolen. It was this continued association that caused him to get into difficulty a second time, and after several hearings with the parents present, the court adjudged Steve to be a neglected boy. There was evidence that from six-thirty in the morning until five o'clock in the evening the father was necessarily away at work, and there was no one to look after the welfare of this boy. He was either at school or at large, and responsible to no one. The facts show that the home was clean and cared for as well as it could be under the conditions, but the child was not being properly cared for and supervised. His associates were not of the right kind. In order to correct this condition the court committed him to the Norris Foundation where he would have proper supervision and guidance. The father failed to show the interest in the boy that could naturally be expected of a father. When he failed to make arrangements for the boy at the Norris Foundation as requested by the court, and stated as his reason for not doing so, "Why should I? I leave everything to you. I give up. I can

say nothing and I can't support him," the responsibility was squarely with the court. After being committed the boy showed his disregard for the authority of the court by running away almost immediately. He was then given an opportunity to live with his aunt, which seemed to be his wish and the wish of his father, where he again ran away several times, finally obtaining employment for a few days and then returning to the father. The court permitted him to remain with the father to see whether this would bring the desired result, but it failed. The boy went to Illinois, where he was picked up by the police. Both the boy and the father had been given every opportunity and failed. The court had no alternative. Appellant assumes that the acts of the boy up to the time he was brought before the court are the only facts to be considered. We do not consider this to be correct. The court is not limited to facts that occurred prior to the time that a child is brought into court but it may consider all material evidence of the conduct of the child up to the time that judgment is rendered.

It is also contended that the court is limited to the charge contained in the petition, and that the original petition charging this boy with being a delinquent child limited the jurisdiction of the court to this particular charge. We do not consider this to be correct. When the child is once brought before the court and the facts are presented, the court may order the petition to be amended and adjudge the child to be a "neglected," "dependent," or "delinquent" child, as the facts warrant. To hold otherwise would defeat the purpose of the law. The purpose of the proceedings is to provide for the welfare of the child and to remove him from unfortunate surroundings. When the facts indicate that the child is not being properly reared or cannot be readily controlled, the child's best interests demand that he be subject to wiser or stronger authority. The only way this can be accomplished is to permit the court to proceed as the facts warrant at the time the determi-

nation is made. The father and child were represented by counsel at all hearings except two. The court was very patient and gave consideration to suggestions made by the father and counsel. The facts warrant the determination made by the court.

At the hearing on January 14, 1944, the probation officer informed the court that the boy had threatened other boys at the Norris Foundation with a knife if they told certain things. The witness had not investigated this statement and it was hearsay on his part. Counsel claims this evidence should not have been received, and in this he is correct. However, this is not a criminal case and does not warrant setting aside the judgment. We realize there are times when even a social worker becomes discouraged with a boy he is trying to help, as parents sometimes worry about the future of their children when the children fail to co-operate, but this does not justify making a serious charge against the boy, which was only hearsay, when the officer was in position to make an investigation and present the facts, if they were the facts. When a child is before the juvenile court he has rights which the court is duty bound to protect, even though the general rules of practice and procedure are not required to be followed. This matter was heard before the court, who was familiar with the laws of evidence. There is ample proof to sustain the judgment of the court without the evidence in question, so we will assume that it was disregarded.

*By the Court.*—Judgment affirmed.