GRUNWALD, Respondent, v. HALRON, d/b/a HALRON OIL COMPANY, Appellant.

*November 28, 1966—January 10, 1967.*

For the appellant there was a brief by *Cornelisen, Denissen, Kranzush & Kuehn,* attorneys, and *David J. Condon* of counsel, all of Green Bay, and oral argument by *Mr. Condon.*

For the respondent there was a brief by *Miller, Pies & Blazkovec* of Algoma, and oral argument by *George F. Miller.*

HEFFERNAN, J.

> *Did trial court err in instructing*
> *on implied warranty?*

If the conduct of the defendant herein was actionable it would not be for a breach of warranty, but for negligence in pumping fuel oil into the gasoline tank. It was improper to instruct the jury on implied warranty. The plaintiff's complaint, however, was not defective, for it alleged a cause of action for negligence as well as for implied warranty.

The instructions,[1] however, were calculated to elicit answers only to questions of breach of warranty and not as to negligence. They failed to apprise the jury of the duty which defendant owed the plaintiff. *Haefner v. Batz Seed Farms, Inc.* (1949), 255 Wis. 438, 440, 39 N. W. (2d) 386. Under the laws of this state the duty of the defendant herein was limited to refrain from acts of negligence, yet the instruction left the impression that an action for breach of warranty was applicable under the facts. We have heretofore held that instructions should be "designed to procure from the jury answers to the

---

[1] "I want to read Section 121.15 of the Wisconsin Statutes.
"Section 121.15
"'Implied warranties of quality and fitness. Subject to the provisions of this act, and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.'"

significant items of potential fault . . . ." *Petoskey v. Schmidt* (1963), 21 Wis. (2d) 323, 330, 124 N. W. (2d) 1. The "potential fault" herein could be only as the result of negligence and the "defendant was entitled to have the jury correctly instructed on the general principles of the doctrine of negligence, and upon the law as applied to the particular negligence claimed." *Guinard v. Knapp-Stout & Co. Company* (1897), 95 Wis. 482, 485, 70 N. W. 671. An important aspect of the instructions in a negligence case is the matter of proximate cause, for though there be negligence, liability may extend only for such damages that are proximately caused by the negligence. In a very recent case we held that it was error to submit a negligence case without a separate causation question. *Baierl v. Hinshaw* (1966), 32 Wis. (2d) 593, 146 N. W. (2d) 433. We conclude that the error was prejudicial.

*Was the evidence adduced sufficient to support a cause of action for negligence?*

Despite the errors in instruction to the jury revealed by this record, we would, in the absence of other factors, order the cause remanded to the county court for a new trial in accordance with the principles set forth herein. However, a review of the record indicates that, even had the jury been properly instructed on negligence and proximate cause, the plaintiff could not have prevailed. Our scrutiny of the evidence reveals no proof which, if properly subjected to the accepted rules of evidence, would be admissible to show the defendant's negligence.

Grunwald based his case upon the assertion that Halron had negligently pumped fuel oil into Wierichs' tanks. To prove this, he relied upon his own testimony and that of Wierichs. Since neither he nor Wierichs was present or had any firsthand information in regard to the incident, their testimony as to negligence was hearsay and excludable unless it could be shoehorned into the record

as one of the proper exceptions to the hearsay rule. The trial court overruled the defendant's objections on the basis of hearsay. Wigmore defines the hearsay rule thus:

"It is a rule that no assertion offered as testimony can be received unless it is or has been open to the test by cross examination or the opportunity therefor." Wigmore, Evidence (Students ed.), sec. 242. See also 5 Wigmore, Evidence (3d ed.), p. 3, sec. 1362.

Our court has quoted with approval a similar statement appearing in McCormick, Evidence, p. 460, sec. 225:

" 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' " *Auseth v. Farmers Mut. Automobile Ins. Co.* (1959), 8 Wis. (2d) 627, 630, 99 N. W. (2d) 700.

Wierichs testified that his entire knowledge of the alleged misdelivery depended not upon his personal observation but upon the assertions of others. He testified, "Well, first Mr. Meyer at the station was receiving complaints and he said Henry do you think we could have gotten a bad load of gas." To the extent that this testimony had the purpose of showing that a bad load of gas was received, it was obviously hearsay and should not have been admitted.

Wierichs did testify that his inventory showed a discrepancy. This assertion based on his own knowledge is, of course, admissible, but it is not probative of Halron's negligence. Wierichs then testified, ". . . immediately I called Don Halron [2] to the fact that such and such a driver

[2] The plaintiff has not asserted that Don Halron was authorized explicitly or impliedly to speak in this respect for L. F. Halron, the defendant. Moreover, contrary to the understanding of the author of the dissenting opinion, the assertion which plaintiff wished to have the jury believe is not the assertion of Don Halron, who may or may not be a managerial employee or officer, but

I am sure he made a mistake and when Don checked the driver admitted it."

The trial judge overruled defendant's objection, apparently upon the basis of plaintiff's contention, "they are permissible—they are admissions on the part of the defendant." A perusal of the record, however, makes it obvious that they were not admissions of the defendant but of an employee of the defendant. This was pointed out to the trial judge by defendant, but the relevance of the distinction was apparently overlooked.

4 Wigmore, Evidence (3d ed.), p. 119, sec. 1078, points out that the admissibility of an agent or employee's statement is dependent upon his authority to make statements that will bind the principal. A distinction, however, is made in some cases where the utterance constitutes a part of the *res gestae*. Such admissions may also be admissible for the purpose of impeachment only, *i.e.*, to show the fact of an inconsistent utterance and not for proof of the matter asserted in such utterance. For a compilation of Wisconsin citations on the subject, see *Hamilton v. Reinemann* (1940), 233 Wis. 572, 577, 290 N. W. 194.

the assertion of the truck driver as incorporated in the statement of Halron as testified to by the plaintiff. The majority opinion of *Rudzinski v. Warner Theatres* (1962), 16 Wis. (2d) 241, 114 N. W. (2d) 466, expresses the basis upon which the majority reached its conclusion, and that rationale why such testimony is not trustworthy need not be repeated here. Suffice it to say, the present case does not in any sense "broaden" the exclusion of *Rudzinski* to include managerial employees. It always has excluded the hearsay admissions of all employees, managerial or not, unless the statement was made "within the scope of the authority of the agent *to speak for the principal*" (emphasis supplied), *supra*, page 245. In Wisconsin, at least as long ago as 1882, this court stated that a *general* agent or *superintendent* for a telegraph company could not bind the principal by his admissions. ". . . though holding a high position . . . he was still only an agent, and for the purpose of admitting away the rights of the defendant he cannot be presumed to have the powers of the corporation." *Randall v. Northwestern Telegraph Co.* (1882), 54 Wis. 140, 144, 11 N. W. 419.

As stated in *Kamp v. Coxe Bros. & Co.* (1904), 122 Wis. 206, 212, 99 N. W. 366, "Hardly any rule of law is better settled than that the declarations of an agent as to past events are not admissible to prove such events."

Wierichs also testified that the driver who made the delivery told him he was discharged, "Simply because he didn't go back and report it [the erroneous delivery] to Mr. Halron so that they could correct it before it [the adulterated gasoline] was spread all over the county." Wierichs also testified that, after an inspection by the oil inspection bureau of the state tax department, he was told that the defendant had pumped 1,000 gallons of fuel oil into the gasoline tank. Both of these statements, to the extent that they attempted to show the truth of the assertion that fuel oil was pumped into the gasoline tank, were hearsay and should have been excluded.

The plaintiff Grunwald on occasions too frequent to enumerate peppered his testimony with references to "fuel oil." Objections to such statements as hearsay were erroneously overruled. It was contended that there was substance to these assertions on the basis of Grunwald's personal observations that the mixture when pumped out of his tank was "black" so "you couldn't look through it." However, there was testimony that fuel oil and gasoline were similar in appearance and that neither gasoline nor fuel oil or a mixture of the two would have the appearance described by Grunwald. There was no evidence of any personal observation by Grunwald that would justify the use of the term, "fuel oil." To the extent that the term constituted his repetition of the assertions of others, it was hearsay; to the extent that it was based upon his conception of what fuel oil looked like, it was mere speculation. There was no evidence properly before the jury on which a finding of negligence could be founded. We therefore conclude that had the jury been properly instructed it could not have returned a verdict for the plaintiff.

*Proximate cause of damages.*

Since we have determined that there was no evidence of any negligence on the part of the defendant, it would be fruitless to pursue at length the question of whether, had it been proved, it was the proximate cause of the plaintiff's damages. A study of the record, however, indicates that the evidence produced was insufficient to prove that any damage to the vehicles was caused by the defendant's alleged negligence. The "experts" produced were unable to assert with any degree of certainty that the mixture allegedly delivered to Grunwald's tanks and used for the short time the evidence indicated would cause the damage alleged. In view of Grunwald's testimony that the fuel pumped from his tank was "black" and all of the testimony indicating that this would not be the appearance of a gasoline-fuel oil mixture, it would appear that there was strong evidence of some other unexplained adulteration, not in any way caused by or resulting from the alleged negligence of Halron.

*Res ipsa not applicable.*

The plaintiff finally urges that, even absent direct proof of the defendant's negligence and the other elements required for a recovery on a cause of action arising from negligence, this case is a proper one to use *res ipsa* to supply the missing links of proof. This argument has no merit. Not only was the possibility of making the *res ipsa* inference not presented to the jury by the court's instructions, but also a requirement vital to the application of *res ipsa* was missing from the case. This court has held that:

"One of the fundamental requirements for the application of *res ipsa loquitur* is that the instrumentality which causes the harm to plaintiff must have been within the exclusive control of defendant." *Fleischman v. Holz* (1964), 23 Wis. (2d) 415, 423, 127 N. W. (2d) 9.

The alleged instrumentality of harm, the fuel, was not under the exclusive control of the defendant. Halron did not produce the fuel; he merely delivered it to the wholesaler. Wierichs controlled the fuel from its receipt from Halron to its delivery to the plaintiff. Finally, the fuel was under the control of the plaintiff while in his tank, and the plaintiff's own testimony indicates that it could have been adulterated while in his tank. The *res ipsa* inference is not appropriate under these circumstances.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss on the merits.

GORDON, J. (*dissenting*). Unfortunately, I was not able to be more persuasive with my colleagues in *Rudzinski v. Warner Theatres* (1962), 16 Wis. (2d) 241, 114 N. W. (2d) 466. Although my concurring opinion in that case expressed an approach adopted by such scholars in evidence as Wigmore and McCormick, as well as by the holdings of several other courts, only one other member of this court joined me in the view that the admissions of the employee in that case should have been accepted as competent evidence against his employer.

The effect of the holding in the case at bar is to broaden that exclusion so that now a person who is a managerial employee may not bind his employer by parol admissions. The employee involved in the *Rudzinski Case* was a theater usher; in the instant case, however, it is reasonably clear that Don Halron holds important executive functions with the Halron Oil Company.

It is true that there is no direct proof in the record as to the title of Don Halron's position. However, evidence as to his managerial status is clearly implicit from the following facts which do appear in the record:

1. Don Halron has been in the oil and gas business for eighteen years (Record, p. 145).

2. Don Halron is the son of the owner of the company (Record, p. 145).

3. When Mr. Wierichs discovered an apparent error in the delivery, he telephoned his complaint to the company and presented his problem to Don Halron (Record, p. 65: ". . . immediately I called Don Halron . . .").

4. Don Halron checked with the errant driver and fired him (Record, p. 65).

5. Wierichs testified that the discharged driver came to him a week later "begging me to ask Don to reinstate him to his job." (Record, pp. 65, 75).

From the foregoing I conclude that the record shows that Don Halron had hire-fire power and possessed other important indicia of managerial status. By its decision the majority has retreated from the statement in *Rudzinski* (at page 245) that an agent's statement against his principal is admissible when "spoken within the scope of the authority of the agent."

When Don Halron told the plaintiff that a driver of the defendant company had placed fuel oil in the gasoline tank, this was, as the trial court expressly held, "an admission on the part of the defendant." The majority of this court, however, now holds that the admission by such an agent is not admissible against the employer. This is simply bad law, as outlined in *Rudzinski,* starting at page 249.

If I am in error as to the nature of Don Halron's position, it should nevertheless be remembered that the trial court permitted this evidence to come in, and there was therefore no occasion for the plaintiff to qualify him further. The dismissal of the complaint on its merits unjustly forecloses the plaintiff from offering additional proof as to Don Halron's position. For all that the members of the supreme court know, Don Halron was, in fact, the operating manager of his father's company.

I would hold that there is probative evidence which would warrant a new trial on the question of negligence and therefore must respectfully dissent.

I am authorized to state that Mr. Justice BEILFUSS joins in this dissent.