RUSECKI, Plaintiff in error, v. STATE, Defendant in error.

*No. 26.  Argued October 5, 1972.—Decided November 9, 1972.*
(Also reported in 201 N. W. 2d 832.)

300

"...

For the plaintiff in error there were briefs by *Cotton, Rose & Rose* and *Terry W. Rose,* all of Kenosha, and oral argument by *Terry W. Rose.*

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. Two evidentiary questions are raised on this review:

1. Did the trial court err in not excluding Krass's testimony concerning the defendant's runaways, such information being communicated to him from the boy's parents?

2. Did the trial court err in not excluding the medical report and Krass's testimony concerning that report pursuant to sec. 885.21, Stats.?

A. Hearsay testimony.

It is the contention of defendant that the trial court's delinquency finding, based upon sec. 48.12 (3), Stats.,[2] was erroneous because it was grounded upon inadmissible hearsay testimony. It is undisputed that the testimony of Allan Krass, the social worker-probation officer, regarding the defendant's two runaways was not based upon personal knowledge or observation, but upon in-

[2] "(3) He is uncontrolled by his parent, guardian or legal custodian by reason of being wayward or habitually disobedient; . . ."

formation communicated to him by defendant's parents on June 17, 1971. Because Krass was incompetent to testify as to the runaways and this testimony was the only evidence adduced thereof, defendant argues the sec. 48.12 (3) delinquency finding must be reversed for lack of competent evidence to support it.

The state argues Krass's testimony concerning the runaways falls within both the official records [3] and business records [4] exceptions to the hearsay rule. Alternatively, the state argues that defendant has waived his right to assert this allegation of error for the lack of timely objection at trial.

The objectionable testimony, according to defendant, is as follows:

"Q. Could you tell us when he broke any of these rules and what rules he broke? A. On May 10 of 1971 he was a runaway and that he did run away from his home for approximately one week's time. However, he did return on his own accord. On June 17, 1971, he did run away from home, at which time he did violate a court order indicating that he was restricted to the home pending a hearing on the allegation that was before the court at that time.

"Q. Mr. Krass, leaving the home without his parents for a day or more at a time, is that contrary to one of the rules that you have for probation? A. That is correct.

"Q. And did you discuss any of these breaking of the rules with Scott Rusecki? A. Yes, I did.

"Q. And do you have the power, Mr. Krass, to discipline someone? A. That is correct.

"Q. What sort of discipline do you have the power to give? A. Most generally I restrict the individual to the home.

"Q. And did you apply any of this discipline to Scott Rusecki? A. That is correct.

"Q. What else do you do, if anything, regarding a boy who breaks your probation rules? A. If he continues to

---

[3] Sec. 889.18 (1), Stats.
[4] Sec. 889.25, Stats.

break the restrictions I would petition the court. But I have no type of discipline other than that. It's at my disposal.

"Q.  Now, Mr. Krass, you referred to a runaway some time in May?  A.  That is correct.

"Q.  Now, how were you— Were you in any way involved in this runaway?  A.  I was contacted by the parents and they indicated to me that he was, in fact, a runaway.

"Mr. Rose: I am going to object, that's hearsay. It's also not in the petition. The petition just recites a June 17 runaway.

"[The objection was overruled by the trial court and the remarks were elaborated upon by Krass.]"

The Children's Code expressly provides for the use of the customary rules of evidence used in civil trials in the juvenile court hearing.[5] Incorporated by this statute into the juvenile adjudication is the hearsay rule which, in this state, is, as stated in McCormick:

". . . Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."[6]

In addition to ch. 48, Stats., providing for the use of civil trial evidence in the juvenile adjudication, this court has provided that unverified hearsay statements are generally to be excluded. In *Harry v. State*,[7] an appeal from a juvenile delinquency adjudication, this court, although affirming the judgment, held certain

---

[5] Sec. 48.25 (3), Stats.: "EVIDENCE. If there is a disputed issue of fact, the customary rules of evidence applied to issues of fact in civil trials shall be followed. . . ."

[6] McCormick, *Evidence* (2d ed. hornbook series), p. 460, sec. 225.  *See: Auseth v. Farmers Mut. Automobile Ins. Co.* (1959), 8 Wis. 2d 627, 630, 99 N. W. 2d 700; *Grunwald v. Halron* (1967), 33 Wis. 2d 433, 439, 147 N. W. 2d 543.

[7] (1944), 246 Wis. 69, 81, 16 N. W. 2d 390.

statements made by a boy's probation officer which contained unverified or noninvestigated assertions by others should have been excluded. So, too, in *Winburn v. State* [8] this court adopted the *Kent v. United States* [9] assertion that the juvenile adjudication must measure up to the "essentials of due process and fair treatment." Presumably this includes the rights of confrontation and cross-examination. Therefore, in the instant case Krass's testimony, which is hearsay under the above definition, should have been excluded unless it falls within one of the exceptions to the hearsay rule. [10]

1. *Waiver.* The state contends that the defendant cannot now complain of the receipt in evidence of the hearsay portions of the social worker's report because he waived its admissibility when his counsel failed to make a timely objection to that evidence. The state cites *State v. Hebard* [11] as authority for the proposition that an objection must be prompt. In *Hebard,* however, the questionable question was asked of two separate witnesses. There was no objection by counsel until the same question was asked of the second witness. Here the objectionable line of questioning was not as critically delayed as in *Hebard.* As a matter of fact, when the objectionable question was first asked concerning the runaways and the nature of the social worker's hearsay information was inquired into, counsel for the defendant immediately objected.

We have said:

"It is one of the most elementary rules of evidence that an objection must be made *as soon as the opponent might*

[8] (1966), 32 Wis. 2d 152, 161, 145 N. W. 2d 178.
[9] (1966), 383 U. S. 541, 562, 86 Sup. Ct. 1045, 16 L. Ed. 2d 84.
[10] Excluded, that is, from the adjudicative portion of the bifurcated juvenile adjudication. Although there is no authority therefor, these reports containing hearsay allegations, nonadjudicated police contacts, and the like, are uniformly perused during the dispositional phase of the proceeding.
[11] (1971), 50 Wis. 2d 408, 425, 184 N. W. 2d 156.

*reasonably be aware of the objectionable nature of the testimony . . . ."* (Emphasis supplied.) [12]

It is perfectly clear from the instant record here that the hearsay aspect of Krass's statement was not apparent from the first exchange concerning the runaways. Only during the second exchange, seconds later, did it become apparent that the probation officer was not testifying from personal knowledge or observation, but from information communicated to him by others. At this point this line of questioning was immediately objected to. Defendant's objection was timely.

2. *The official records exception.* The state contends that the social worker-probation officer's report was validly received in evidence in its entirety under the official records exception to the hearsay rule. That exception is stated in sec. 889.18, Stats., which provides:

"(1) AS EVIDENCE. Every official record, report or certificate made by any public officer, pursuant to law, is evidence of the facts which are therein stated and which are required or permitted to be by such officer recorded, reported or certified . . . ." [13]

The record made by a child's probation officer undoubtedly is an official record within the purview of this statute. The Children's Code provides that juvenile court workers or probation officers who are appointed to furnish services to the court as per secs. 48.06 and 48.07, must keep a written record of their investigations and submit that record to the juvenile court judge.[14] Thus, these public officers are required by law to make a report concerning the conduct of a juvenile and that report is admissible under sec. 889.18.

But the precise question here becomes whether hearsay statements may be included within the probation

---

[12] *Collier v. State* (1966), 30 Wis. 2d 101, 104, 140 N. W. 2d 252.
[13] The statute continues with an exception not applicable here.
[14] Sec. 48.08 (1), Stats.

officer's report and yet be inadmissible into evidence during the adjudicative phase of the proceeding. The public records exception has not heretofore been interpreted in the juvenile court context.

In *Jacobson v. Bryan*,[15] it was noted that a strict application of sec. 889.18, Stats. (then sec. 327.18), would render admissible all data recorded by a public officer pursuant to law, whether or not it contained hearsay statements or conclusory remarks. *Jacobson*, however, stands for the proposition that such a broad admissibility standard should not apply to traffic reports prepared by police officers. These reports, according to the court, are receivable into evidence only to the extent that the officer himself would be able to so testify. Thus, hearsay statements and conclusory assertions in traffic accident reports were held inadmissible.

The official report or records exception was also interpreted in *Estate of Eannelli*,[16] which held death certificates to be within this exception to the hearsay rule. The court noted, however, a distinction under this exception between hearsay statements and conclusory assertions contained in a record or report. While the former are admissible, the latter are not.

More recently, in *Wilder v. Classified Risk Ins. Co.*[17] a case involving a police traffic report, this court stated:

". . . Generally, under sec. 889.18 matters appearing therein founded upon hearsay are admissible, but this court has made a qualification for traffic-accident reports."

Our inquiry then must be: Is the official records exception applicable to the juvenile adjudication? The Children's Code, as has been noted, makes the usual evidentiary rules of civil trials applicable to juvenile

[15] (1944), 244 Wis. 359, 12 N. W. 2d 789.
[16] (1955), 269 Wis. 192, 68 N. W. 2d 791.
[17] (1970), 47 Wis. 2d 286, 289, 177 N. W. 2d 109.

courts. The commentators are divided on the question. Wigmore, on the one hand, prefers a cautious approach to the admissibility of hearsay statements within public records.[18] It is his feeling that the usual mode of proof, calling the declarant to testify, is usually available to the person asserting as true the statement in the report.

McCormick, on the other hand, chafes at the limitation to personally observed matters in the public records exception. He observes

"[T]he conclusions of a professional investigator making inquiries required by his professional and public duty contain assurances of reliability analogous to those relied upon as assuring accuracy of his statements of fact from firsthand knowledge. A skilled investigator can be presumed to report as accurate or to rely upon a hearsay statement only after inquiry into its accuracy. Often such an inquiry, by one professionally equipped to make it well and on the scene at a time when events are fresh and inquiry is most likely to be fruitful, could be relied upon to assure the reliability of those hearsay statements upon which he relies." [19]

However, McCormick opts for the more limited expansion of the public records exception propounded in the Proposed Federal Rules of Evidence rather than the broader approach of the Uniform Rules. The Proposed Federal Rules [20] provide for the admissibility of "factual findings" in a public record made pursuant to law with two limitations. The first limitation is that this admissibility expansion be made applicable only to civil litigation and offers made against the government in criminal cases. The reason for this is the potential conflict with a defendant's right of confrontation. Sec-

[18] 5 Wigmore, *Evidence* (3d ed.), p. 532, sec. 1635.

[19] McCormick, *Evidence* (2d ed. hornbook series), p. 738, sec. 317.

[20] *Proposed Federal Rules of Evidence*, Rule 803 (8), 51 F. R. D. 315, 420 (1971). *See also:* 2 *Federal Civil Practice* (4th ed.), pp. 56, 57, 206–208.

ondly, the trial court is expressly granted the authority to exclude such a report if "the sources of information or other circumstances indicate lack of trustworthiness." McCormick explicitly rejects the Uniform Rule approach as too liberal. The Uniform Rules would admit "written reports or findings of fact" of a public official if the making of the report was within his duty and the duty also included the investigation of the matter reported.[21]

Several cases in sister jurisdictions have discussed the admissibility of investigative reports containing hearsay statements. Thus, for example, in *Warner v. Ward*,[22] the Kentucky Court of Appeals allowed into evidence the preadoption report of a social worker notwithstanding the hearsay statements contained within. It was the court's feeling that since the statute expressly provided for the submission of these reports to the trial court, it would be an invasion of the legislative province to hold otherwise. It was further noted that the departmental representative who made the report, which was available to all parties before trial, was available for cross-examination. Also available were those persons whose hearsay statements were included in the report.

The Supreme Court of Errors of Connecticut in *In re Appeal of Dattilo*,[23] an appeal from a juvenile court order, affirmed in the superior court, denied an application to revoke the commitments of three children of the appellant. The chief allegation on appeal was the consideration, by the juvenile court, of reports of juvenile court investigators containing hearsay allegations. Noting the trend to broaden the admissibility of these reports, the court held proper the admissibility of the investigative reports. Important to the Connecticut court was the express statutory authorization of the investigations at the behest of the court and the statu-

[21] 4 Jones, *Evidence* (5th ed.), Uniform Rules, 63 (15), p. 1950.
[22] (Ky. 1966), 401 S. W. 2d 62, 64.
[23] (1950), 136 Conn. 488, 72 Atl. 2d 50, 53.

tory provision allowing cross-examination of the investigators.

In *Long v. Long* [24] the Fifth District California Court of Appeal held admissible reports made pursuant to court order in child custody cases even though they contained hearsay statements.. Necessary, however, was that each party receive a copy of the report and the opportunity to cross-examine the investigators and subpoena those persons who made the statements contained in the report.

Finally, the Municipal Court of Appeals for the District of Columbia reversed an order of commitment of a child by the juvenile court on the basis that an employee of the social services department was permitted to read an *ex parte* report which contained statements from the child's doctor. [25] The report was inadmissible, according to the appellate court, because it violated both the hearsay rule and the physician-patient privilege:

"But even if we put aside the question of privilege there still remains the basic fact that respondent's rights were adjudicated and her liberty taken from her on the basis of an alleged professional opinion of a medical man whom her counsel had no opportunity to cross-examine. The doctor was described as a psychiatrist, but there was nothing in the record about his professional status except his name. Respondent had no opportunity to cross-examine him as to his experience or qualifications, as to the nature and extent of his professional contact with respondent, as to the basis for his opinions, or whether commitment for an indefinite period . . . was the only sound medical solution of the frictions and problems which had arisen between mother and daughter." [26]

In summary, the question for determination by this court is whether the official records exception to the

---

[24] (1967), 251 Cal. App. 2d 732, 59 Cal. Rptr. 790.

[25] *In re Sippy* (D. C. Ct. App. 1953), 97 Atl. 2d 455.

[26] *Id.* at page 457.

hearsay rule operates to permit probation officer investigative reports and testimony thereof containing hearsay statements into evidence in the fact determination of the juvenile adjudication.

The commentators urge caution where the rights of confrontation and cross-examination in criminal cases exist. Liberalization has been the trend in the child custody cases,[27] adoption cases, and dependency or neglect cases. In the only case arising out of a juvenile delinquency commitment discovered by this author, the appellate court resoundingly reversed the juvenile court for admitting the report containing hearsay.

Arguably, the United States Supreme Court has indicated its desire that the formalities of the criminal adjudicative process are not to be engrafted onto the juvenile court system.[28] Thus, the right of a jury trial does not extend to juvenile adjudications. It must be recalled, however, that *Gault* [29] specifically gave the rights of confrontation and cross-examination to juveniles. These rights have not been rescinded or seriously questioned by the supreme court.

While juvenile adjudications are not "criminal" they may result in a significant curtailment of a child's freedom. For this reason we choose to concur with McCormick and the Proposed Federal Rules which limit the admissibility of public records containing hearsay statements to civil litigation, *i.e.*, to litigation wherein the rights of confrontation and cross-examination of one's accusers are not all important.

[27] *See Larson v. Larson* (1966), 30 Wis. 2d 291, 140 N. W. 2d 230; *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282.

[28] *McKeiver v. Pennsylvania* (1971), 403 U. S. 528, 551, 91 Sup. Ct. 1976, 29 L. Ed. 2d 647. *See also: In re D. M. D. (a minor) v. State* (1972), 54 Wis. 2d 313, 317, 195 N. W. 2d 594.

[29] *In re Gault* (1967), 387 U. S. 1, 87 Sup. Ct 1428, 18 L. Ed. 2d 527. *See also: Winburn v. State* (1966), 32 Wis. 2d 152, 145 N. W. 2d 178.

3. *The business-records exception.* It is further argued by the state that the testimony of the social worker also falls within the business-record exception to the hearsay rule. That exception is stated in sec. 889.25, Stats., as follows:

"**Business records as evidence.** Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of such act, transaction, occurrence or event, if the custodian or other qualified witness testifies to its identity and mode of preparation, and if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility. The term 'business' as used in this section, includes business, profession, occupation and calling of every kind."

Again, this court has not interpreted this exception to the hearsay rule in the juvenile court context. While it has generally been applied in civil litigation, this court has also applied the exception to criminal trials. Thus, in *Blackwell v. State* [30] it was held that sec. 889.25 is made applicable to criminal proceedings by sec. 957.14 (presently sec. 972.01, and without the express provision making sec. 889.25 applicable to criminal trials).

As previously noted, in *Wilder v. Classified Risk Ins. Co.,* [31] this court held that police traffic reports are not within the purview of the business-records exception. The reason proffered for this exception to the exception is that the basis for allowing the business-entry rule as

[30] (1969), 42 Wis. 2d 615, 623, 167 N. W. 2d 587.
[31] *Supra,* footnote 17.

an exception to the hearsay rule does not exist in the case of police reports.

". . . In business as in hospitals, the persons making the entries have personal knowledge in most cases or they rely on statements of employees or persons in the business or hospital *who have a duty to make the statements relied upon.*" (Emphasis supplied.) [32]

On the question of whether investigative reports ought fully to fall within the business-records exception, McCormick vacillates.[33] Much, he asserts, depends upon the skill of a trained investigator and his basis for crediting a particular out-of-court statement. Caution is important "because almost none of these witnesses [making statements to the investigator] could be said to have a duty in the regular course of police business to transmit this information." [34] The Proposed Federal Rules of Evidence also require the maker of the report to have personal knowledge of the data reported or to rely upon information transmitted by a person who does have personal knowledge and is in the course of a usually conducted activity. In the Proposed Federal Rules Advisory Committee's Note it is stated:

". . . If, however, the supplier of the information does not act in the regular course [of business], an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not. . . . The rule follows this lead in requiring

[32] *Id.* at page 293.
[33] McCormick, *Evidence, supra,* footnote 19, at pp. 717–734, secs. 304–314.
[34] *Id.* at page 727.

an informant with knowledge acting in the course of the regularly conducted activity." [35]

It is our conclusion that the business-entry exception to the hearsay rule should not be interpreted to allow the probation officer's report containing hearsay allegations into evidence during the adjudicative phase of the juvenile proceeding. The scholars and proponents of the Uniform Evidentiary Codes are significantly cautious when the hearsay exceptions confront rights of confrontation and cross-examination. These constitutional rights, since *Gault*, properly belong to the juvenile as well as the adult accused. The "wooden" designation of juvenile adjudications as criminal or civil is singularly unimportant.[36] Important is the preservation of the constitutional rights, afforded juveniles, of confrontation and cross-examination.

We conclude, therefore, that it was error to admit into evidence the hearsay aspects of the social worker-probation officer's report.

B. Privileged information.

Defendant argues that the juvenile court's finding of delinquency based upon sec. 48.12 (4), Stats.,[37] was error because it was grounded upon information privileged under sec. 885.21, the physician-patient privilege.[38] The defendant's counsel strenuously urges this court to concur that Scott Rusecki was being "treated" by Dr.

---

[35] (1971), 51 F. R. D. 419, 427. *See also:* 2 Federal Civil Practice (4th ed.) pp. 202–206.

[36] *Cf. McKeiver v. Pennsylvania, supra,* footnote 28.

[37] "(4) He habitually so deports himself as to injure or endanger the morals or health of himself or others."

[38] Sec. 885.21, Stats.: "**Communications to doctors.** (1) No physician or surgeon shall be permitted to disclose any information he may have acquired in attending any patient in a professional character, necessary to enable him professionally to serve such patient . . . ."

Kappus and therefore the medical report containing information regarding drug abuse was privileged.

For three reasons, defendant's position with respect to the physician-patient privilege is untenable. The first is that the record does not show defendant was being treated by Dr. Kappus.[39] Kappus was appointed by defendant's probation officer to examine defendant as a result of the seriousness of his condition when found in the park. The Children's Code specifically provides for the physical and mental examination of a child coming within its jurisdiction, in the discretion of the court, after reasonable cause has been found to warrant such examination "in order that the condition of such person may be given due consideration in the disposition of the case." [40] The entire medical report from Dr. Kappus is couched in evaluative rather than treatment language. Indeed, the conclusion recommends treatment in some type of residential treatment center. There is no indication in the report or in the balance of the record that Dr. Kappus treated Scott Rusecki.

Second, sec. 885.21 (1), Stats., itself provides an exception to the privilege where:

"(f) In situations where the examination of an abused or injured child creates a reasonable ground for an opinion of the physician or surgeon that the *condition was other than accidentally caused* or inflicted by another." (Emphasis supplied.)

While there are no Wisconsin cases interpreting this provision as applying to other than child abuse juvenile litigations, a plain reading would appear to include *any* case where a child is injured other than accidentally.

[39] *See generally, Racine v. Woiteshek* (1947), 251 Wis. 404, 29 N. W. 2d 752 (treatment required); *also, Simecek v. State* (1943), 243 Wis. 439, 448, 10 N. W. 2d 161.

[40] Sec. 48.24, Stats.

It should be noted, however, that the comments to the Statutes Annotated gear this provision into sec. 48.981, which deals with reports on abused children, such abuse apparently caused by another. It may well be that the legislature intended this exception to the physician-patient privilege to apply only in situations of child abuse inflicted by others. As noted, however, the statutory exception reads so as to reasonably include within it the present type of situation.

Third, although the juvenile court admitted Dr. Kappus's medical evaluation of Scott Rusecki, over counsel's objection, the court expressly stated it would not consider the report except for purposes of disposition. Defendant's counsel strenuously argues that the only evidence of a sec. 48.12 (4), Stats., violation was the reference to drug abuse by Dr. Kappus. This is not true. Excluding from consideration any reference to either drug abuse or hearsay runaways, the police officer's testimony that he found defendant half naked and incoherent is more than sufficient to base a finding that defendant "habitually so deports himself as to injure or endanger the morals or health of himself or others" within the meaning of sec. 48.12 (4).

We thus conclude that, although the finding of delinquency under sec. 48.12 (3), Stats., was in error, the finding under sec. 48.12 (2) is unopposed and the finding under sec. 48.12 (4) is valid. The order for transfer must be affirmed since the adjudication of delinquency is upheld on two of the three grounds found by the trial court, the court's disposition is within the prescribed statutory limits, and we find no abuse of discretion in that disposition.

*By the Court.*—Judgment affirmed.

HEFFERNAN, J. *(concurring)*. The judgment must be affirmed since it is supported by an uncontested find-

ing that defendant was habitually truant from school. However, I cannot agree with this court's conclusion that defendant could have been found delinquent solely on the basis that he "habitually so deports himself as to injure or endanger the morals or health of himself . . . ." Sec. 48.12 (4), Stats.

The only admissible evidence considered by the juvenile court in reaching that finding was Officer Schuetz's testimony that on one occasion he found defendant half naked and incoherent in a public park. This court's opinion strains the accepted meaning of "habitually" by holding that a single occurrence can show habit.

Apart from the particular facts of this case, I am troubled by this court's willingness to approve a finding of delinquency based upon the vague and uncertain language of sub. (4) of sec. 48.12, Stats. We have repudiated the concept that the state's interest in the welfare of children allows it to play fast and loose with their constitutional right of due process. *Winburn v. State* (1966), 32 Wis. 2d 152, 145 N. W. 2d 178. Where adult offenders are concerned, we have recognized that statutes which fail to give adequate notice of the conduct prohibited are constitutionally infirm. *State v. Driscoll* (1972), 53 Wis. 2d 699, 193 N. W. 2d 851; *State v. Zwicker* (1969), 41 Wis. 2d 497, 164 N. W. 2d 512. Here, defendant's liberty is at stake.

In juvenile proceedings, sec. 48.12, Stats., serves a role analogous to the use of the criminal code in actions against adult offenders. A juvenile should not be deprived of his liberty on the basis of the language of sec. 48.12 (4). That statute not only fails to give adequate notice of the conduct punishable by incarceration, but also fails to provide the juvenile court with sufficient guidance for making a finding of delinquency.[1]

---

[1] We note that sec. 48.12, Stats., has been amended by Laws of 1971, ch. 125, sec. 316, effective November 5, 1971, to provide

. While I concur in the result of this case and agree with the court's admirable discussion and disposition of the evidentiary issues posed on this appeal, I cannot agree with the court's unnecessary and, in my opinion, erroneous conclusion affirming the finding of delinquency under sec. 48.12 (4), Stats.

that a child who "habitually so deports himself as to injure or endanger the morals or health of himself or others," may be found "in need of supervision," but not "delinquent," and a disposition under sec. 48.345 may be made that does not include incarceration. This amendment does not, however, correct the infirmities of the prior statute, which are perpetuated in the new legislative enactment.